## Rakestraw v. Sebree Deposit Bank.

(Decided November 26, 1920.)

### Appeal from Webster Circuit Court.

1.  Bills and Notes—Forgery of Instrument.—The general rule is that, where the question is whether a certain person forged a particular

instrument, proof is inadmissible that on another occasion he forged another paper wholly disconnected with the one in controversy. But, if the other forged papers have a connection with the one in controversy, as if all of them were made in pursuance to a scheme and purpose of the forger to secrete, cover up and screen himself from a series of defalcations,' and which also furnish a motive to commit the particular forgery, then such other forgeries by him form an exception to the general rule and are admissible, otherwise they are not.

2. Pleading—Admissions.—A pleading in an independent suit, if it contained admissions against the interest of the litigant whose pleading it is and against whom it is offered, may be material in the case on trial, but no such pleading in a former independent case is competent in behalf of the one who filed it, as containing admissions in his favor, since such admissions would be clearly self serving.

3. New Trial—Evidence.—A litigant can not obtain a new trial because of alleged incompetent evidence which he alone elicited from the witness and which was given in response to questions by his attorney; nor may a new trial be given for' such testimony when it is not objected to.

4. New Trial—Newly Discovered Evidence—Diligence.—Newly ' discovered evidence, for which a new trial may be granted, must not only be material and decisive in its nature, but the one relying on it must exercise the proper diligence to have procured it on the trial; and, ordinarily, a new trial will not be granted if the alleged newly discovered evidence is only cumulative or impeaching in its effect

5. Bills and Notes.—Non Est Factum—Evidence of Stockholder After Introduction of Other Witnesses.—It is no violation of the provisions of subsection 3 of section 606 of the Civil Code for a stockholder in a corporation to testify in chief after the introduction of other witnesses in chief who have no connection with the corporation; nor is it reversible error for the officers or stockholders of a corporation to detail a conversation had in the presence of one of the obligors on a note who is dead at the time of the trial, in a suit against the other obligor or obligors when the estate of the dead obligor has been wound up and the assets exhausted with nothing left for the satisfaction of creditors; and, especially is this so when the conversation did not relate to the issue on trial, which was a plea of non est factum by the obligor in the suit on trial.

6. New Trial—Argument of Counsel.—The record examined and found that the alleged improper argument of counsel relied on for a new trial was not objectionable.

G. L. WITHERS and LAFFOON & WADDILL for appellant.

B. M. SUTTON, C. W. BENNETT and N. B. HUNT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This suit was filed in the Webster circuit court by the appellee, Sebree Deposit Bank, against the appellant, Ella Rakestraw, to recover judgment on a note for $2,500.00, alleged to have been executed by defendant as surety for W. A. Easley, and dated August 14, 1915, and due two months thereafter, credited by $384,48, the amount realized from the estate of Easley, who died after the execution of the note and before the filing of the suit. The only defense interposed by Mrs. Rakestraw was a plea of *non est factum*. The jury empaneled to try that issue returned a verdict in favor of plaintiff and judgment was rendered against her for the amount of the note (less the credit), interest and cost, and complaining of that judgment she prosecutes this appeal. Eleven supposed and material errors, according to defendant's counsel, are included in the motion for a new trial and discussed in appellant's brief as grounds authorizing a reversal of the judgment, but we do not find ourselves able to agree with counsel as to the materiality of any of them. It would unduly lengthen this opinion to discuss each of them in detail, and we have concluded to notice only the more important ones and which might be considered as approaching nearer to materiality.

First. It is seriously contended that the verdict is flagrantly against the evidence, but an examination of it leads us to a different conclusion. The note sued on, though dated August 14, 1915, was, according to the testimony of the bank's cashier, actually executed on September 21st, thereafter, and at the same time there was another note signed by defendant for $2,000.00 payable to the Farmers National Bank of Clay, Kentucky, and which had been sent by the latter bank to plaintiff for the purpose of having it executed. Each of those notes was attested by the cashier, who swore that he saw the defendant sign her name to them. The president of plaintiff bank testified that the cashier left the office on the day mentioned with the note in suit not signed by defendant and shortly thereafter returned with it signed by her. Defendant admits signing the Clay bank note, but says it was the only one she did sign on that occasion. A number of cashiers of different banks testified as experts, some of whom were familiar with defendant's signature, and they all gave it as their opinion that the signature in question was genuine. Other notes executed

by defendant, the genuineness of which was admitted, were introduced for the purpose of comparison. They, with the note sued on, are in the record for our inspection, and the signature in question so much resembles the others as that we can detect no difference in their appearance. To further enlighten the jury, as well as this court, enlarged photographs were taken of other genuine signatures of defendant, and also of the one in question, and these photographs are a part of the record, having been introduced on the trial, and they possess a like convincing quality. The chief contradiction of plaintiff's testimony is that given by defendant, which consists in simply denying that she signed the note. There are also some facts and circumstances tending to sustain her denial, the principal one of which is that the cashier of the Farmers National Bank of Clay, Kentucky, testified that his bank received its $2,000.00 note a few days after July 14, 1915, when, as we have seen, plaintiff's cashier swore that it was not executed until the date above stated. But this circumstance is susceptible of explanation, which plaintiff endeavored to do, by insisting that the books of the latter bank may have been kept so as to show the entry of its note as of the day it bore date, although not executed for a considerable time thereafter, and that this was done to make the books appear regular and to prevent it appearing therefrom that the bank had carried past due paper. But, whatever effect that circumstance had, it was before the jury and was considered by it, and we are quite sure that the verdict can not be said to be flagrantly against the evidence.

Second. It is earnestly complained that the court committed error in not permitting plaintiff to answer this question, "How many notes did plaintiff bank have in its possession as shown by its books bearing date August 14, 1915, purporting to be signed by defendant which were forgeries?" The court sustained the objection to the question and an avowal was made that the witness would say, "at least six." The general rule is that, where the question is whether a certain person forged a particular instrument, proof is inadmissible that on another occasion he forged another paper, wholly disconnected with the one in controversy. First National Bank v. Wisdom's Executors, 111 Ky. 135, and cases referred to therein. But, it is contended in support of the alleged error now under consideration that under the

exceptions to the general rule, as found in the Wisdom case, it was error for the court to refuse to permit defendants to answer the above question. We can not agree with the position of counsel in this respect. In the Wisdom case it was conceded by all parties that only the one officer of the appellant bank therein (M. G. Cope, its president) committed the forgery, if it was done. It was shown that he was a defaulter to his bank which had been brought about by his speculations in the stock market; that in order to cover up and secrete his defalcations he had, not only about the same time forged the name of Mr. Wisdom to other notes, but had likewise forged the names of other persons to a number of other notes; that he had adopted such criminal course of conduct because of his defalcations which, according to the opinion of this court, furnished a motive for him to commit the particular forgery being investigated. In the instant case it was not pretended to develop any such conditions as existed in the Wisdom case. Moreover, enough appears in this case to show that defendant was under the impression, and it was the theory of herself and of her counsel, that Easley was the person who forged her name to the note in suit (if it was so forged) as well as to the others about which she was asked, and the proof in the case shows that he had nothing to do with the execution or procurement of the note sued on. It, as we have seen, was executed, if at all, through the procurement of Morehead, the cashier of plaintiff, and who succeeded Easley after his retirement as cashier, which occurred some time before the note was actually executed. The jury were bound to believe, as they evidently did, that Morehead saw the note signed and attested its execution, and further, that Easley had nothing to do with it; all of which present an entirely different state of facts from those shown in the Wisdom case. If it were competent to introduce proof of the character here offered it would result in abolishing the above general rule, since there could be no case where the exception contended for would be any less applicable, for it would always be admissible to allow such testimony if, as a matter of fact, there had been prior forgeries to the one in contest.

Further complaint is made because the court sustained an objection to the introduction of the petition in a former suit filed by defendant against plaintiff, in which she sought the surrender and cancellation of cer-

tain described notes purporting to be signed by her because they were forgeries, and the competency of that petition is also sought to be sustained under a principle announced in the Wisdom case. But the circumstances rendering the offered record (in that case) competent, as shown in the opinion, are essentially different from those appearing in this case. The pleading (in another suit) which was admitted in that case was a petition filed by the bank (defendant in the case on trial) against the surety of its defaulting president to recover a large sum made up of his numerous peculations. It contained certain admissions by the bank which the court held were provable against it in the case on trial under the familiar rule that admissions against one's interest are always competent. Quite to the contrary, the rejected pleading in this case was not even filed by plaintiff and could not contain any admission by it either for or against its interest. It was the production, exclusively, of defendant and in which she incorporated self-serving statements favorable to her interest, which, under the most familiar rules of evidence, are incompetent. Neither do we conclude that the statements in the offered pleading possess any of the qualities which would render them competent under the *res gestae* rule, as is contended. The office of that well known rule is to render competent testimony which would otherwise be incompetent on the ground that the offered declarations and statements were so closely related to the principal fact as to constitute a part of the same transaction and to have been made with such spontaneity and without opportunity for contriving or devising a falsehood and so as to exclude the possibility of its having been done for self serving purposes, or to have emanated from any other source than a truthful one. Measured by this standard for the admission of such testimony, it is clear that the court properly excluded the offered petition. It is argued in brief of counsel that the court excluded the entire record of the case referred to, but no part of it was either offered or excluded, as appears from the bill of exceptions, except the rejected petition. If the answer in that case came within the scope of the rule announced in the Wisdom case there is nothing in the record to show it.

It is next insisted that the court erred in allowing the witness, Powell, who was president of plaintiff bank, to testify after the introduction of other evidence in chief contrary, as claimed, to subsection 3 of section

606 of the Civil Code, since he was a stockholder in the bank. But this point of practice was otherwise settled by this court in its opinion in the case of Western District Warehouse Co. v. Hayes, 97 Ky. 16. Neither was the testimony of the witnesses Powell and Morehead inadmissible under the provisions of subsection 2 of the same section of the Code, forbidding testimony of a transaction with one who was dead when the testimony was offered. It is so contended in this case because the witnesses referred to a conversation with Easley concerning the note in litigation and he was dead at the time of the trial. Since his estate is in no manner involved in this suit it is doubtful if the subsection applies. But, however that may be, it is shown that Easley's estate had been wound up and his property exhausted, so that in no event could the result of this suit in any manner affect him or his estate. Furthermore, the testimony was not objected to, and it related only to a conversation about the note in Easley's presence, which was so clearly immaterial as to be non-prejudicial, even if it was error to admit it. It did not and could not have any influence on the issue as to whether defendant subscribed her name to the note in litigation.

Under this head it is lastly insisted that it was error for plaintiff's witnesses to refer to its books and to what they contained without producing the books themselves. A sufficient answer to this contention is, that the only reference made by the witnesses to the books was that elicited by counsel for defendant in their cross-examination, and it related to the date when the entry of the note in litigation was made on the books, and perhaps to the dates of entries of other notes, which were of even less materiality on the issue of *non est factum*, though such testimony might have been highly material if the defense of *nudum pactum* had been relied on. Under such circumstances defendant can not complain of this testimony, since her counsel invited the references to the books by his cross-examination. Besides, there was no objection made to the statements at the time, nor was any motion entered to enforce the production of the books. For these reasons this alleged error can not be relied on, even if it be assumed that the entries on the books were material evidence, which, however, is not shown to be true.

Third. Another ground, strongly relied on, is newly discovered evidence, which consists in the fact that an

examination of the books of the Farmers National Bank
of Clay, Kentucky, made after the trial, developed that
the renewal note executed by defendant to that bank,
which was attested by the witness Morehead, was entered
on the books of that bank on July 16, 1915, or at any
rate the entry bore that date, and counsel for defendant
argue that this fact contradicts Morehead when he said
that the note in litigation, as well as the one to the Farm-
ers National Bank, were each executed at the same time
on September 21, 1915. There are several reasons why
the court did not err in granting a new trial for this al-
leged newly discovered evidence. They are: (1) That the
requisite diligence to be exercised in procuring testi-
mony was not shown in this case so as to make the al-
leged newly discovered evidence serviceable to defend-
ant; (2) the evidence is merely contradictory of the wit-
ness Morehead, and, therefore, impeaching in its nature,
and (3) the cashier of the bank at Clay testified in the
case, without objection, to practically the same facts re-
lied on as newly discovered evidence. Upon that point,
after testifying to having sent the note executed by de-
fendant to his bank to plaintiff on or before July 14, 1915,
he said, "I know it (the note to his bank) was returned
within a few days, not over six or eight days, and upon
its return the stamps thereon were cancelled by me." As
stated, there was no objection to that testimony nor was
there any effort made, through process, motion or other-
wise, to obtain the books of the Farmers National Bank
during the trial, and since the entries thereon if other-
wise admissible (under the rules governing the introduc-
tion of book entries) could serve only to contradict the
cashier of plaintiff and be cumulative with the testimony
of Hearin, the cashier of the Farmers National Bank,
it is not the character of newly discovered evidence for
which the court may grant a new trial.

The fourth ground argued for a reversal is, improper
argument of plaintiff's counsel before the jury. The ob-
jectionable remarks, as shown in the bill of exceptions,
consisted in these statements of counsel: "The cancella-
tion marks on the revenue stamps of the Clay bank note
showing the date July 16, 1915, were evidently made by
mistake in using a rubber stamp with the wrong date
thereon. S. D. Powell and J. D. Morehead swear to you
it was signed by Mrs. Rakestraw September 21, 1915,
and give the details. This is no question of mistake on
their part. Your verdict cannot be for defendant with-

out stamping these good men as guilty of deliberate false swearing, but if you should find for plaintiff, then we can say out of charity for Mrs. Rakestraw that she merely forgot." The question of the proper latitude accorded an attorney in the argument of his client's cause and the limitations thereon have been before this court in many cases, the most recent one being Welch v. Commonwealth, 189 Ky. 579, in which opinion many other cases are referred to. It was there held that the attorney did not transgress his rights, when, in the discharge of his duty to his client, he endeavored to reconcile inconsistencies in the testimony and confined his remarks to the facts as testified to, and reasonable deductions to be drawn from all the facts and circumstances appearing in the case. To deny him such liberties, as held in that case, "Would circumscribe his functions to such an extent as to render it almost impossible for him to be of any service in the argument of his client's cause and to practically render it useless for him to attempt to do so." The remarks of counsel complained of did not go beyond his rights as defined in the case referred to. He attempted nothing but a reconciliation, or an explanation, of an apparent inconsistency between a witness for his client (Morehead) and the date of the cancellation of the stamps put upon the note executed to the Farmers National Bank of Clay. The latter part of his remarks contained a statement of an indisputable fact and was by no means improper.

Other criticisms of the trial, including one directed to the instructions given to the jury, are urged as material errors; but we have thoroughly considered them and are unable to agree with counsel. Upon the whole case we have failed to discover any error prejudicial to the substantial rights of the defendant and the judgment is therefore affirmed.