508

H. W. PARRISH, et al., d/b/a Parrish
Transfer Line, Appellants,

v.

CLAXON TRUCK LINES, Inc., et al.,
Appellees.

Court of Appeals of Kentucky.

Nov. 4, 1955.

Rehearing Denied Feb. 24, 1956.

Dailey & Fowler and Frank M. Dailey, Frankfort, for appellants.

Smith, Reed & Leary, George Catlett, Frankfort, for appellees.

MOREMEN, Judge.

The Department of Motor Transportation of Kentucky suspended appellant's common carrier certificate for a period of 15 working days. On appeal to the Frankfort Circuit Court, this action was affirmed.

In this opinion H. W. Parrish, Elmo Parrish and Ernest Parrish, who do business as Parrish Transfer Lines, will be referred to as "Parrish"; appellee, Claxon Truck Lines, Inc., will be referred to as "Claxon"; and the Department of Motor Transportation of Kentucky will be called "Department." The Central and Southern Motor Freight Tariff Association, herein called "Central and Southern," is a rate making agency composed of over 700 common carriers, and both Parrish and Claxon belong to the organization. This agency—under powers of attorney executed to it by its various members, and under the authority of its by-laws and regulations to which each carrier submits when he joins the organization—prepares and files proposed rates and tariffs with the Department as required by KRS 281.680. This statute requires every common carrier to maintain on file with the Department a schedule of rates, fares, charges and classifications, and a time schedule, if any, of all motor vehicles operating under a certificate. Central and Southern is a voluntary organization and it is not compulsory that a carrier join it. However, skill is required in preparing and justifying charges and schedules, and most carriers have found it to be a satisfactory means of accomplishing a difficult task. It is not necessary that the individual carrier accept for itself the entire change in rates which the agency may propose and any carrier that so desires may submit a different rate, which it may believe to be more suitable to its individual needs, to any part of the overall proposal which the agency files with the Department. The indication of its intention not to follow the herd has been designated and used throughout the record and briefs by the term "flag out."

Both Claxon and Parrish are common carriers by motor truck who operate between Louisville and Frankfort in direct competition with each other.

In April 1952, Central and Southern called a meeting of its standing rate committee in regard to a rate increase over certain territory, which included that served by Parrish and Claxon. The testimony discloses that notice of the meeting was mailed to various subscribers and a hearing was conducted at its offices in Louisville. On April 14, 1952, the standing committee of Central and Southern adopted a proposed increase in all general freight rates by an amount of ten per cent on all shipments which were over the minimum, and an increase from $1.50 to $2 in the minimum charge for transportation of freight between Louisville and Frankfort.

On May 2, 1952, Central and Southern, in behalf of its members, filed with the Department the proposed tariff in conformity with KRS 281.690 which deals with the manner by which rates may be changed, and provides that no common carrier shall make any change until the Department is notified and the carrier has given notice to interested parties. After the proposed change is filed, the Department is empowered to determine the "lawfulness" of the rate upon a hearing duly called and, pending the hearing and decision, the Department may suspend the operation of the new rates for a period of not more than six months.

On June 6, 1952, the Department entered an order which reads in part:

"It Is Hereby Ordered, that a ten (10) percent increase and a $2.00 minimum shipment charge of freight rates

between Kentucky points intrastate, be, and the same is, hereby authorized to go into effect without suspension, and immediately upon receipt of this order; provided, however, that this ten (10) percent increase be temporary in nature and subject to change upon the issuance of a Final Order in the forthcoming hearings relative to the adoption of a completely new intrastate freight rate structure.

"It Is Further Ordered, that the charging of the $2.00 minimum shipment charge be optional with any carrier pending the Final Order in the forthcoming hearings relative to the adoption of a complete new intrastate freight rate structure."

At this point, it is well to recall that KRS 281.680 requires a common carrier to maintain on file, at all times, a schedule of the rates and charges it is actually making.

After the Department entered the foregoing order Central and Southern, on behalf of it many carriers, filed with the Department an instrument designated as "Supplement No. 67," and by it about 35 carriers "flagged out" or indicated that they would not go along with the main group but would exercise their option and retain a minimum charge of less than $2. Parrish was not in this group. He therefore had on file with the Department a schedule of rates that indicated his minimum charge to be $2.

On February 24, 1953, Claxon filed a complaint before the Department that Parrish had violated the terms of subsection (1) of KRS 281.685 which provides that no common carrier shall charge any rates other than those specified in its tariff and classifications or give any unreasonable preference or advantage to any person.

Parrish filed an answer in the nature of confession and avoidance and, in justification of its failure to make the $2 minimum charge, pleaded that it had relied on the advice of a member of the Department and pleaded the alleged failure of its agent,

Central and Southern, properly to represent it.

On this appeal Parrish urges as grounds for reversal: (1) the order of June 6 making the minimum charge optional exceeded the authority vested in the Department; (2) the Department permitted the introduction of evidence after Claxon had closed its case; (3) the power granted by the statutes to the Department to suspend common carrier certificates is unconstitutional as a deprivation of property without due process of law; (4) the Department's action was arbitrary and was not supported by evidence.

Parrish initially argues that, under subsection (2) of KRS 281.690, after the proposal of new rates and pending the Department's decision, it could only (1) put the new rates in operation; or (2) suspend the operation of the new rates for a period of not more than six months, and that the Department's action in ordering "the charging of $2.00 minimum shipment charge be optional" was beyond the powers of an administrative body created by the legislature.

■ If the power and authority of an administrative body is to be confined to the exact text of the statute creating it, its powers will be so limited that the purpose for which it was established could rarely be accomplished. When we consider the words next above quoted, we find the word "optional" not too expressive and accurate but it seems to have created no misunderstanding among the trade generally because about 35 other carriers properly understood it to mean that the $2 minimum shipment charge was authorized to become effective immediately provided, however, that an interested carrier, if it so desired, could establish a lesser minimum shipment charge, and this is just what about 35 other carriers did. The order did not provide that the statutes providing for the orderly publication and filing of tariffs, as interpreted by the regulations of the Department, should be ignored. These definite statutes pertaining to rate making and publication were certainly not voided by the language of

the order. Furthermore, Central and Southern, agent of Parrish, acting through a duly executed power of attorney, published the rates by which it indicated its desire to take advantage of both the ten per cent general increase and the $2 minimum shipment charge. It cannot now be heard to say that its duly authorized agent acted contrary to its wishes.

■ Under its second ground urged for reversal, Parrish argues the action of the examiner in permitting Cecil Dorsey, a principal stockholder of the appellee corporation, to testify after other witnesses had been introduced was prejudicial under subsection 3 of section 606 of the Civil Code of Practice under which this case was tried.

We held in Johnson v. Mutual Benefit Health & Accident Association, 312 Ky. 776, 229 S.W.2d 758, 761, as follows:

"Appellant relies on Civil Code of Practice, § 606(3). We call attention to our holdings that, in a case wherein one of the parties is a corporation, no objection lies, under the section of the Code above, to that party's introduction of stockholders of the corporation, its president, or its agent, after having introduced other evidence in chief. See Smith v. Owenton, etc., Turnpike Co., 14 Ky. Law Rep. 924; Western District Warehouse Co. v. Hayes, 97 Ky. 16, 29 S.W. 738; Rakestraw v. Sebree Deposit Bank, 189 Ky. 668, 225 S.W. 506; and Central Passenger R. R. Co. v. Wahle, 13 Ky. Law Rep. 463."

In any event, the witness Dorsey testified concerning the financial detriment that resulted to Claxon because of the action of Parrish in charging a rate less than the listed tariff. We find it in no way prejudicial because it seems to be a matter of common knowledge of which we take note that the action of a common carrier in charging a lesser rate than that which is proper results in unfair competition and financial loss to the competing carrier.

■■ Parrish argues (in support of its contention) that the Motor Carrier Act is unconstitutional insofar as it gives power to the Department, upon finding that a motor carrier has been guilty of violating any provision of the act, to "suspend, revoke, alter or amend any certificate or permit issued to such carrier," KRS 281.670, because it violates the due process of law provision of the U. S. Constitution, Amend. 14 and section 2 of the Constitution of Kentucky. Cases from other jurisdictions are cited, presumably in support of the proposition that various rights to use the streets granted by an administrative or other political entity constitute a property right and not a mere license revocable at the pleasure of the licensor. The opinions in these cases are impressive when applied to the facts in the respective cases but do not involve, as we understand them, the problem we have here; for instance, in Houston & North Texas Motor Freight Lines v. Johnson, Tex.Civ.App., 159 S.W.2d 905, the court held that the Texas Railroad Commission had only such powers as were expressly granted to it or were necessary to effectuate the objective of those powers expressly granted, and held that a certificate of convenience and necessity involves property rights, but this opinion clearly held that the commission had a right to approve or disapprove sale of such a certificate so long as it did not act arbitrarily. In Boyce v. City of Gastonia, 227 N.C. 139, 41 S.E.2d 355, it was held in a case where a city by ordinance granted a franchise to a street railway line, it could not, by subsequent ordinance, arbitrarily annul such license because the grant was more than a mere license and was a property right protected by the constitution to the extent that it could not be taken away except by due process of law. The opinion in Southern Bell Tel. & Tel. Co. v. City of Nashville 35 Tenn.App. 207, 243 S.W.2d 617, similarly held that a telephone company's franchise to maintain wires in the city streets was a property right subject to constitutional protection; and 8th Ave. Coach Corp. v. City of New York, 286 N.Y. 84, 35 N.E.2d 907, agreed that a franchise was property and that the city through its traffic regulations and police orders could not destroy that right without due process of law.

This court has on occasion taken a little different tack. In Eastridge v. Southeastern Greyhound Lines, 280 Ky. 392, 133 S. W.2d 95, it was flatly held—in following the opinion in Slusher v. Safety Coach Transit Co., 229 Ky. 731, 17 S.W.2d 1012, 66 A.L.R. 1378—that a citizen has no inherent right to make the highways his place of business by using them for a common carrier for hire and such use is a privilege which may be granted or withheld by the state in its discretion without violating any provision of the state or federal constitution. However, in this case we do not feel it necessary to determine the nature of the right obtained by a licensee and may properly assume, at least for the purpose of this opinion, that Parrish had something of value which deserved the protection of the law, so perhaps a short discussion of what is meant by due process of law is required.

We have held that "due process of law" and the "law of the land" are synonymous and mean that no citizen shall be deprived of his life, liberty or property without reasonable notice and opportunity to be heard according to regular and established rules of procedure. Board of Levee Commissioners of Fulton County v. Johnson, 178 Ky. 287, 199 S.W. 8, L.R.A.1918E, 202; Fleenor v. Hammons, 6 Cir., 116 F.2d 982, 132 A.L.R. 1241. In Milner v. Gibson, 249 Ky. 594, 61 S.W.2d 273, 277, it was said:

> "It is an established rule that an enactment accords due process of law, if it affords a method of procedure, with notice, and operates on all alike. A statute is consistent with due process where it gives the power of preliminary procedure to a board or commission, and the final hearing and determination to the courts."

Pacific Live Stock Co. v. Lewis, 241 U.S. 440, 36 S.Ct. 637, 60 L.Ed. 1084.

We think in this case we may properly observe, as Judge Miller did in Gratzer v. Gertisen, 181 Ky. 626, 205 S.W. 782, that a person receives due process in every case where he has the right to resort to a remedy administered without sale, denial or delay. Here Parrish has had a trial before an ex-aminer, a commissioner of the Department, a circuit court and a court of last resort in the state, and we believe it has had sufficient forums within which to seek application of the processes of law.

 Finally Parrish argues that the action of the Department was arbitrary. It may be remembered that Parrish admitted that rates were charged in smaller amounts than those listed in his schedule of tariffs and relied upon the grounds set out above.

We have found the procedure to be constitutional and we find nothing arbitrary in the Department's action in suspending Parrish's license for 15 working days after he had plainly violated the terms of the statute.

Judgment affirmed.