R. H. BAKER, COMMISSIONER OF HIGHWAYS, ETC., COM-
PLAINANT, APPELLANT, *v.* HICKMAN COUNTY, DEFEND-
ANT, APPELLEE.

(*Nashville*, December Term, 1931.)

Opinion filed April 9, 1932.

L. D. SMITH, Attorney-General, and JOHN L. NEELY, Assistant Attorney-General, for complainant, appellant.

R. L. PEERY and W. L. PINKERTON, for defendant, appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This action was brought by the Commissioner of Highways and Public Works, with whom the Attorney-General and Reporter joined, to obtain a declaratory judgment with respect to the constitutionality of Public Acts 1929, chapter 145. Complainants have appealed from a decree of the chancery court sustaining the Act.

Chapter 145 of the Public Acts of 1929 is limited in its application to Hickman County alone, by reference to population which excludes other counties. It directs that the State shall repay to said county, in the manner and subject to the provisions of the Acts of 1927, chapter 23, "all funds which may have been expended by said counties upon any road or roads which had heretofore or is now designated by the Department of Highways and

Public Works of the State of Tennessee as a part of the State Highway System, and which road or roads appeared as such, or now appear as such upon the plans of said Department.'' The claim is to be allowed by the Commissioner of Highways and Public Works upon proof which satisfies him ''that the funds (were) expended in the construction of said roads or highways that were at the time, or are now a part of the State Highway System.'' It is provided that the amount to be assumed by the State under this Act shall not exceed $103,167.30.

The bill of the Commissioner and the Attorney-General recites that Hickman County has presented its claim under the Act of 1929 for $103,167.30, the exact amount named as the maximum in the statute, expended by said county in constructing a road leading from Centerville, its county seat, to its north boundary line, a distance of seventeen miles, known as the Centerville and Dickson road; that after the completion of said road, but prior to the passage of chapter 145 of the Acts of 1929, the Department of Highways and Public Works designated this road as a part of the State Highway System, thereafter assuming its maintenance as a part of the State Highway System; and that the Commissioner is satisfied from the proof submitted that the county, from 1919 to 1923, actually expended said sum in improvements and construction work on said road. It is averred that the Commissioner is withholding his approval of the claim of the county, under the Act of 1929, for the sole and only reason that he is advised that the Act is unconstitutional and therefore void.

It seems obvious from the language of the Act and the statements of fact made in the bill of complainants, that

the legislative intent was to reimburse Hickman County for the sum expended by it on the particular road described, which had been made a part of the State Highway System at the date the Act was passed.

Public Acts 1927, chapter 23, applies to all counties of the State. It provides for the reimbursement to the counties of all sums paid by them to the State Department of Highways, and used by the Department in the construction of the State Highway System, including money furnished and accepted after the enactment of the statute. This reimbursement is to be accomplished by annual payments from the proceeds of the privilege tax on the sale and storage of gasoline, supplemented, if found necessary after ten years, by the general funds of the Highway Department.

The claim of Hickman County under the Act of 1929 does not come within the general Act of 1927, because (1) the money was spent in the construction of a road not then a part of the State Highway System, and (2) the money was spent by the county, through its own officers or employes, and was not "paid over . . . to the Department . . . and used by the Department." Acts 1927, chapter 23, section 1.

In 1931, during the pendency of this appeal, the General Assembly enacted chapter 59 of the Public Acts of 1931, amending the Act of 1927, so as to include in the reimbursement to the several counties all sums "expended by such counties on a highway, or highways, which are now a part of the State Highway System," etc., limited in respect to each county to the amount of bonds, issued to procure the money so spent, outstanding and unpaid on June 1, 1931, and with a graduated

deduction according to the time elapsed between the construction of the road and its designation as a state highway.

The record before us does not disclose the length of time elapsing between the construction of the road by Hickman County and the date of its designation as a part of the State Highway System. Nor do the pleadings disclose whether the money expended was procured by a bond issue. It is, however, stated on the brief of the county in this court: ''The money expended on this road was raised by a bond issue authorized by the legislature and these bonds will have to be paid either by taxes levied on the citizens of Hickman County or by the method provided in chapter 145 of the Acts of 1929.''

Assignments of error as originally filed challenged the Act of 1929 as violative of the Constitution of Tennessee, article 11, section 8, in that it confers upon Hickman County special rights, privileges and benefits not granted to other counties, and thus creates an arbitrary class for the benefit of which the general law is suspended. It was also argued that the inclusion of Hickman County's claim would impair the obligation of the contract arising between the State and the counties under the Act of 1927, diminishing to the extent of the added claim the fund available for payment to the counties under that Act.

After the case had been submitted to the Court we filed a memorandum opinion, calling attention to the importance of the questions involved, as affecting the public interest, and directed a second argument. We requested counsel to consider and aid us in determining whether the appropriation to Hickman County is made for a state

purpose for which state revenues may be used; whether it violates the constitution, article 2, section 31, inhibiting the giving or lending the credit of the state; and what, if any, effect the enactment of chapter 59 of the Public Acts of 1931, may have on the rights of the parties.

The construction of state highways has constituted a major portion of the work of the state government during the ten years preceding the enactment of chapter 145 of the Acts of 1929. It is a historical fact, within the common knowledge of all citizens of the State, that more than five thousand miles of improved highways have been constructed as a part of the State Highway System, at a cost of many millions of dollars. This tremendous work has been accomplished by the State, through its Department of Highways and Public Works, under Acts 1917, chapter 74, and Acts 1919, chapter 149, and amendatory acts, with the federal government, the state, and the several counties sharing the expense of construction. The proportion of the cost borne by the counties has not been fixed by statute, and has varied according to the varying circumstances of the several construction projects. In the construction of roads with federal aid the relative burdens of the state and county have been smaller, with a corresponding increase when no such aid was available. In each case, with the exception of the cost of furnishing the right of way, fastened on the county by express statutory provision, the sum contributed by the county has been fixed by agreement between the county and the Commissioner of Highways, the statute vesting him with such authority. Acts 1919, chapter 149, section 22, provides: "The said State Highway Commis-

sion (the Commission was succeeded by a single Commissioner by Acts 1923, chapter 7) shall have the power within its reasonable discretion to require of any county where a road or roads are to be built to contribute its fair proportion of the funds necessary to construct said highway, but in no case more than 50 per cent shall be required.''

It is also a fact forming a part of the history of the State that a large proportion of the counties of the State, if not all of them, have issued bonds in considerable amount for money borrowed to pay the county's share of the cost of highways constructed within its boundaries, recognizing a local benefit from such construction in addition to that accruing to the state at large.

In this situation the Act of 1927, chapter 23, was enacted, designed and intended to make a new distribution of the cost of the State Highway System as between the State and the several counties, the State assuming the burden theretofore cast upon the counties by the Commissioner, acting under section 22 of chapter 149, Acts 1919.

Upon the adoption of this new scheme for the payment of the cost of the highways, it apparently developed that, as in the case of Hickman County, some of the counties did not wait for the Commissioner to act, but proceeded to spend money in the construction of highways on their own account. That Hickman County was not alone in making such expenditures is a necessary inference from the fact of the enactment of Acts 1931, chapter 59. These expenditures were not included in the reimbursement provisions of the Act of 1927, and were added thereto by the amendment of 1931, to the extent that the coun-

304

ties had issued bonds therefor, which were unpaid on June 1, 1931, and subject to the deductions above noted.

These facts, apparent from the statutes referred to or within the judicial knowledge of the Court, must necessarily be taken into consideration in order to understand and determine the practical effect of the statute involved in this litigation, and for that reason have been detailed herein.

■ We think there is no merit in the contention of the Attorney-General that the inclusion of Hickman County's claim in the reimbursement provisions of the Act of 1927, will impair the security or obligation of contractual relations arising thereunder between the State and the several counties originally entitled to its benefits. We doubt that the statute of 1927, creates a contractual relation between the State and its subdivisions. *Demoville & Co.* v. *Davidson County*, 87 Tenn., 214, 224; *State ex rel.* v. *Cummings*, 130 Tenn., 566, 172 S. W., 290. But no such county is here complaining and there is no proof that the fund designated will not be ample, so that the question is hardly presented for present determination.

■ The three statutes, Acts 1927, chapter 23, Acts 1929, chapter 145, and Acts 1931, chapter 59, evidence a single legislative purpose: to relieve the several counties of the burdens incurred and assumed by them in the construction of a State Highway System and to make those burdens a charge upon the highway funds of the state at large. The questions raised by the Court, whether this is a State purpose for which state revenues may be appropriated, and whether such appropriation is a giving or lending of the State's credit in violation of

the constitution, article 2, section 31, should be considered, first, with reference to the underlying policy or purpose of the three statutes, as constituting a single scheme or plan of legislation, each of them being obviously related to the other two as a means of accomplishing the legislative purpose stated above. *Hill* v. *Roberts,* 142 Tenn., 215, 221.

The several counties are but political subdivisions of the State, and together constitute the whole. The welfare, political and financial, of the State is inextricably involved with that of its several parts. The revenue with which the several counties may satisfy the bonded indebtedness incurred by them for county purposes is that revenue which the State authorizes and empowers it to collect. ''The State delegates the power of taxation, but it may withdraw such power, and itself assess taxes for municipal purposes.'' *Demoville & Co.* v. *Davidson County, supra.*

The Act of 1927, chapter 23, section 8, provides: ''. . . and accordingly all such counties as on January 1, 1929, shall have outstanding bonds representing the amounts or any part of the amounts so contributed by them shall be bound to hold and apply all moneys distributed to them under this Act for the sole purpose of paying the principal and interest of such outstanding bonds until all of such outstanding bonds and interest thereon shall have been paid and discharged.''

We think we may judicially infer that the primary purpose of the General Assembly in this legislation was to provide a means for the retirement of the indebtedness of the counties incurred in the construction of the highway system. The gasoline tax was currently accepted as an economically sound scheme for imposing the cost of

the highways on those who use them, in proportion to the use made of them. To authorize each county for itself to impose such a tax would multiply the difficulties and expense of collection. In this situation the General Assembly fixed the State tax on the sale and storage of gasoline at a sum believed sufficiently large to permit the prescribed distribution among the counties. It is the duty of the General Assembly to levy, or authorize the counties to levy, a sufficient tax to meet the legal obligations of the counties, as well as their current expenses, and to the extent that the money to be paid to the counties is to be applied by them as directed in section 8 of the Acts of 1927, the scheme adopted meets this legislative obligation, freeing other sources of county revenue for taxation for strictly county purposes.

The expenditures for which the counties are to be reimbursed were for a purpose in which the counties and the State had a common interest, and for which the State might have assumed the entire expense in the first instance. All of the roads, whether constructed by the counties or by the State, have been taken under the exclusive control of the State, to be maintained by state officers at state expense. In such circumstances, the changed legislative opinion being that the public welfare would be best served by making the entire cost of the highway system a charge on the proceeds of a state tax, available for highway purposes, instead of dividing a portion of it among the counties, we think the appropriation of state revenue for such purpose is an appropriation for a state purpose, for which the power of state taxation may be constitutionally exercised.

■ The wisdom of this policy is exclusively a legislative matter, and is not within the constitutional prerogatives of the courts to consider or determine. *Cavender* v. *Hewitt,* 145 Tenn., 471, 239 S. W., 767. But since the changed policy applies to all the counties of the State, and in that sense to the State itself, and its necessary effect is to rehabilitate and improve the financial condition of the several counties, the legislation may not be entirely divorced from the idea of a strictly state purpose. The financial condition of the State can be no better than that of its several subdivisions.

The provisions of article 2, section 31, of the Constitution, in part, are: ''The credit of this state shall not be hereafter loaned or given to or in aid of any person, association, company, corporation or municipality.''

Assuming for the purpose of this discussion that a county is a ''municipality,'' as the term is used in this section of the constitution, we conclude that the legislation under consideration does not involve a giving or lending of the State's credit.

■ This section of the constitution has not heretofore been construed, so far as the reported decisions of this Court show. But the similar provision of article 2, section 29, restricting the giving or lending of the credit of any county, city or town, has received judicial construction which, by strict analogy, induces the conclusion we reach here. The rule to be deduced from the decisions is that when an appropriation of county revenue is made for a county purpose, to be expended by county officers under the control of the county, the object of the appropriation remaining the property of the county when completed, the enterprise is accomplished by direct ac-

tion of the county, and does not involve a giving or lending of the county's credit, in the sense of the constitution. It is only when the county unites with some other corporation or persons, giving or lending its aid, the county surrendering its control of the project, that its credit is given or loaned. *Berry* v. *Shelby County,* 139 Tenn., 532, 201 S. W., 748; *Knoxville Ice & Cold Storage Co.* v. *City of Knoxville,* 153 Tenn., 536, 563-564, 284 S. W., 866; *Imboden* v. *City of Bristol,* 132 Tenn., 562, 567, 179 S. W., 147; *Colburn* v. *Railroad,* 94 Tenn., 43, 53, 28 S. W., 298.

The appropriation of county funds to be expended by the Commissioner of Highways was a lending of the county's credit to the State, within the rule of the cases cited, but was not within the constitutional limitation of article 2, section 29, as held in *Ransom* v. *Rutherford County,* 123 Tenn., 1, 130 S. W., 1057, and in *Hill* v. *Roberts,* 142 Tenn., 215, 217 S. W., 826.

The construction of the State Highway System at the joint expense of the State and the counties was not a lending of the State's credit to the counties, because the project was accomplished by direct action of the State, for a state purpose, the completed system remaining under the control of the State for regulation and maintenance. Relief of the counties from their assumed share of the cost, by the appropriation of state revenue to reimburse the counties therefor, is not within the purpose or meaning of the constitutional restriction. And this is true whether the legislative purpose be to strengthen the financial condition of the State, by relief of its several subdivisions, as above suggested, or whether the General Assembly merely recognized that,

through the development of the highway system as a unified state project, the counties have a claim upon the State for reimbursement, founded on equity and justice, though not enforceable in a court of law even if the State were not immune from suit. *Lehigh Valley R. Co.* v. *Canal Board,* 204 N. Y., 471, 97 N. E., 964, Ann. Cas., 1913C, 1228.

██ Conceding, therefore, the constitutional power and authority of the General Assembly to transfer the entire burden of the cost of the state highways to the State, we have yet to consider the original contention of the Attorney-General that the Act of 1929, chapter 145, is rendered void and unenforceable by article 11, section 8, of the constitution, in that it operates to suspend the general law for the benefit of Hickman County, and confers upon Hickman County rights and privileges not extended to other counties in like situation.

It appears to us rather obvious that the Act of 1929 does confer upon Hickman County rights which are denied other counties which may have expended money in the construction of roads subsequently made a part of the State Highway System. If we view the Act in the light of the situation existing at the date of its enactment, the general law of 1927, restricted the policy of county reimbursement for highway expense to those counties which had contributed funds directly to the State for expenditure by State officers, pursuant to the discretion vested in them by law, on roads already designated as a part of the State Highway System. Removing this restriction by an act of limited application, the only effect of which is to admit the claim of Hickman County, excluded by the provisions of the general law, is clearly the suspending of the general law for the benefit of that

county, as well as conferring upon it a right of reimbursement not extended to other counties in like situation.

And if we view the Act in the light of the enactment of the Act of 1931, chapter 59, amending the Act of 1927, it appears that by the general law the State has made provision for all counties in like situation with Hickman County, restricting their right of reimbursement to amounts for which their bonds were outstanding and unpaid on June 1, 1931, subject to further proportionate deductions according to the time elapsed between the construction of the roads and their designation as a part of the State Highway System. Hickman County is given a material advantage, in the absence of such restrictions and deductions, if the Act of 1929, can be given effect.

We have recognized the validity of special acts affecting a particular county in its governmental capacity or functions. *Redistricting Cases,* 111 Tenn., 234, 272-283, 80 S. W., 750; *State ex rel. v. Cummings,* 130 Tenn., 566, 172 S. W., 290; *Stokes v. Dobbins,* 158 Tenn., 350, 13 S. W. (2d) 321. But in matters affecting the proprietary rights of counties, the cases have recognized that statutes conferring special benefits upon a particular county unduly favor the citizens of that county, to the prejudice of the citizens of other counties, and in violation of article 11, section 8, of the Constitution. *State v. Burnett,* 53 Tenn. (6 Heis.), 186; *Weaver v. Davidson County,* 104 Tenn., 315, 59 S. W., 1105; *State ex rel. v. Cummins,* 141 Tenn., 318, 210 S. W., 161; *State ex rel. v. Stewart,* 147 Tenn., 375, 247 S. W., 984; *Berry v. Hayes,* 160 Tenn., 577, 28 S. W. (2d) 50.

In *Weaver v. Davidson County, supra,* the Court said:

"If the legislation is obnoxious because it is partial legislation, the fact that it is legislation affecting the counties of the State does not cure its viciousness, because the constitutional prohibition is as effectual to prevent partial legislation as to counties as it is to the citizen." In *State ex rel.* v. *Stewart, supra,* a statute granting to Shelby County excess fees of its county officers was held to suspend the general law for the benefit of that county, since no other county was given such rights, and the statute was for that reason adjudged void, as in conflict with article 11, section 8, of the Constitution. And in *Berry* v. *Hayes, supra,* an act having the effect of relieving Williamson County of the burden of furnishing and paying for rights of way for state highways, common to all counties by general law, was held void, the court saying: "It is arbitrary class legislation for which no possible justification can be conceived. There is no reasonable ground for granting an immunity to Williamson County which does not apply to every other county alike."

 That counties have a proprietary right in their revenues, raised by taxation for county purposes, is recognized by the cases holding that such revenues may not be appropriated by the State for other than county purposes. *Demoville* v. *Davidson County, supra; State ex rel.* v. *Cummings,* 130 Tenn., 566. And it clearly follows that an appropriation of state revenues to a county affects the county as beneficiary in a proprietary and not a strictly governmental capacity.

The State, having embarked upon a legislative policy of reimbursing its counties for their contributions toward the cost of the highway system, could only execute this policy by general law applicable alike to all counties.

It could not have excluded Hickman County from the benefits conferred upon all other counties, and by the same rule it may not, in pursuance of such general policy, confer upon that county privileges which by the general law are denied to the others.

We conclude therefore that the special law, Acts 1929, chapter 145, is in conflict with the Constitution of the State, article 11, section 8, and therefore void and unenforceable, and a declaration to that effect will be made the decree of this Court. Costs of the cause will be adjudged against Hickman County.

It appearing that by the terms of the Act of 1931, chapter 59, claims of counties are required to be filed on or before November 1, 1931, we think the Commissioner of Highways should treat the claim of Hickman County as having been filed under that Act, permitting proper amendments to make the claim conform to its requirements.