Argued October 23; reargued November 13; affirmed
November 21, 1933

## SALMON RIVER-GRANDE RONDE HIGHWAY IMPROVEMENT DIST. ET AL. *v.* SCOTT ET AL.

(27 P. (2d) 183)

*J. M. Devers,* of Salem ( J. W. De Souza, of Salem, on the brief), for appellants.

*W. T. Vinton* and *Eugene E. Marsh,* both of McMinnville, for respondents.

BELT, J.   This is a mandamus proceeding to compel the defendant commissioners of the Oregon State Highway Commission to pay to the plaintiff highway improvement district, in compliance with chapter 298, G. L. O. 1933, the sum of $3,150.29, as specified in said act.   A demurrer to the alternative writ was overruled and, upon refusal of the defendants to plead further,

the circuit court ordered and adjudged that a peremptory writ issue. Defendants appeal.

It is conceded that the decision of this case hinges upon the constitutionality of the act purporting to authorize the payment of this money. Chapter 298, G. L. O. 1933, is entitled "An Act Authorizing, empowering and directing the state highway commission to pay to the Salmon River-Grand Ronde highway improvement district certain sums of money in cooperation and as a contribution toward the building and construction of the Salmon River Cutoff highway between Valley Junction, in Polk county, and Otis, in Lincoln county, within said highway improvement district, and to pay to the Umpqua highway improvement district certain sums of money in cooperation and as a contribution toward the building and construction of the Drain-Reedsport highway between Drain and Reedsport in Douglas county, within said highway improvement district, and declaring an emergency." After reciting the organization of the plaintiff highway improvement district and that the Salmon River Cutoff highway is a public and permanent road constructed "for the use and benefit of all of the people of the State of Oregon" and has been taken over and added to the highway system of the state, section 1 of the act provides that:

"The state highway commission hereby is authorized, empowered and directed to pay to the Salmon River-Grand Ronde Highway Improvement district, in cooperation and as a contribution toward the building and construction of said Salmon River Cutoff highway, out of the state highway funds, the following amounts at the times stated, to wit:

March 15, 1933, $3,150.29
\* \* \*"

Additional payments are authorized to be made during the years 1933 to 1947, inclusive.

The state highway commissioners, being in charge of trust funds, have submitted the question as to whether this act contravenes Article XI, section 8 of the Oregon Constitution, which provides as follows:

"The state shall never assume the debts of any county, town, or other corporation whatever, unless such debts shall have been created to repel invasion, suppress insurrection, or defend the state in war."

It appears from the alternative writ that the Salmon River-Grande Ronde Highway Improvement district was duly organized in June, 1926, under and by virtue of chapter 399, G. L. O. 1921. It further appears from the writ that it was the original plan of the highway improvement district to build a road about 10 miles in length, in accordance with market road standards and specifications, and at an approximate cost of $35,000. However, the original plans and specifications were altered by the state highway commission and a road was constructed according to the standards and specifications of a state highway and at a much greater cost than was originally contemplated by the district. It is admitted that, as a result of such action on the part of the state highway commission, it was necessary for the highway improvement district to issue and sell general obligation bonds amounting to $125,000 for the purpose of raising funds to construct a portion of said highway. Thereafter, the highway improvement district raised by direct taxation the approximate sum of $90,000, in addition to the amount derived from sale of bonds, in order to complete the highway in accordance with the plans and specifications as approved by the highway com-

mission. It is further averred that the Salmon River Cutoff highway has been almost entirely constructed by said highway improvement district under the supervision and direction of the Oregon state highway commission and through the cooperation of the United States Bureau of Public Roads and that the same has been taken over by the state highway commission as a part of the state highway system. It is further averred that there remains unpaid on this bond issue the sum of $120,000 with interest thereon at $5\frac{1}{4}$ per cent payable semiannually, and that the funds appropriated by virtue of chapter 298, G. L. O. 1933, will be used by the improvement district to pay these bonds as they mature.

It thus appears from a recital of the facts in the alternative writ that the money which the act directs the state highway commission to pay to the improvement district will be used for payment of principal and interest on the bonds, whereas it is shown from the face of the act that the state highway commission is directed to pay this money to the improvement district ''in cooperation and as a contribution toward the building and construction of said Salmon River Cutoff highway''. Can this court, in determining the constitutionality of the act, consider matters not appearing in the act and of which it can not take judicial notice? This question was answered in *Kinney v. Astoria et al.*, 108 Or. 514 (217 P. 840), wherein the court said:

''The judicial department must, when passing upon the nature of the purpose of a statute, base its decision upon the matters appearing upon the face of the statute, and possibly facts of which judicial notice may be taken may also be considered; but ordinarily a court can not make an independent inquiry as to facts which

do not appear in the statute and are discoverable only outside of the provisions of the statute, and then, based upon such extraneous facts, say that the statute is unconstitutional:   *   *   *.''

To the same effect see *Waterloo Woolen Mfg. Co. v. Shanahan,* 128 N. Y. 345 (28 N. E. 358, 14 L. R. A. 481). Also see *Stevenson v. Colgan,* 91 Cal. 649 (27 P. 1089, 25 Am. St. Rep. 230, 14 L. R. A. 459 and cases cited in L. R. A. note). If this well-established rule be followed and consideration be given only to those matters appearing upon the face of the act, it is clear that the statute does not offend the above constitutional provision as it contains no reference to any bonded indebtedness. It is certainly within the province of the legislature to direct that such funds be used for the construction of state highways. If the act is constitutional, it remains only for the state highway commission to comply therewith and to pay the money to the highway improvement district.

Let us assume, however, that we may take into consideration, in determining the constitutionality of the act, the admitted fact that the money paid will be used to retire these highway improvement bonds. Does it follow that there is an assumption of indebtedness by the state and that such constitutes a violation of the fundamental law? We fail to see wherein the act obligates the state to pay these bonds. The legal obligation to pay this bonded indebtedness still rests upon the highway improvement district. The state has not undertaken to adopt the liability of the district nor to put itself in place of the district. It is within the power of any future legislature to discontinue the payments provided in the act in question. Assumption of indebtedness, in the ordinary acceptation of the words, means

for one person to bind himself to pay the debt incurred by another: Vol. 1, Words and Phrases, First Series, p. 589.

In *Kinney v. Astoria,* supra, this court had under consideration an act appropriating money to the city of Astoria to constitute a trust fund for the purpose of aiding the city to pay bonds. These bonds had been issued to provide funds for the construction of public property destroyed by fire in 1922. It was urged that this act violated Article XI, section 8, of the state Constitution prohibiting the state from assuming the debt of any county, town, or other corporation, but such contention was held untenable. In holding that there was no violation of the constitutional provision in question, the court said:

"We do not now decide whether Chapter 280 does in truth operate as a pro tanto assumption of a future debt, but if it be assumed for the purposes of the present discussion that the statute operates as a pro tanto assumption of a debt of the city it is not such a debt as is forbidden by Article XI, Section 8, of the state Constitution. In the final analysis the state is appropriating money to pay for a state interest."

So it may be said in the instant case that the state appropriated this money for a public purpose, namely, the construction of a state highway. The legislature no doubt felt that it was just and equitable to grant some relief to a highway improvement district unduly burdened by taxes on account of having constructed a highway which it was the primary duty and obligation of the state to construct.

In *Stoppenback v. Multnomah County,* 71 Or. 493 (142 P. 832), suit was instituted to enjoin Multnomah county from the issuance and sale of certain bonds,

the proceeds of which were to be used in constructing an approach to and a bridge across the Columbia river, connecting the highway leading from Portland, Oregon, to Vancouver, Washington. Chapter 349, G. L. O. 1913, provided among other things for a refund by the state to Multnomah county of an amount equal to the annual interest on the bonds. It was urged that this act violated Article XI, section 8, of the Constitution of Oregon, in that it imposed upon the state an obligation which originally had been assumed by the county. The court held against such contention.

The Supreme Court of Illinois, in *Mitchell v. Lowden,* 288 Ill. 327 (123 N. E. 566), had under consideration an act entitled "An act in relation to the construction by the state of Illinois of a statewide system of durable hard-surfaced roads upon public highways of the state and the provision of means for the payment of the cost thereof by an issue of bonds of the state of Illinois." Section 10 of the act provided that the department of public works and buildings could make use, in the construction of the roads, of any paved road of a proper, durable, hard-surfaced type which might have been constructed by the county and accepted by the state. In such case the state allotted to the county an amount of money equal to the share of the actual cost to the county of such paved road, and provided that the county, at its option, might use the money so allotted toward the payment of outstanding bonds. It was contended that this section violated the provision of the state constitution relative to the assumption of indebtedness. In disposing of this contention adversely to appellant, the court said:

"Section 10 merely provides for the payment by the state of the cost of a road of which it takes control as a part of the state-wide system. The state

assumes no debt but pays in cash for what it purchases, and the county may use the money to construct or improve its other roads, or, at its option, in the payment of its bonds issued to improve its state-aid roads. The taxes of the inhabitants of the county for the construction of a state-wide system of roads will not be affected in any way. The county will merely be paid for the cost it has paid for the road taken."

Also see *Baker v. Hickman County,* 164 Tenn. 294 (47 S. W. (2d) 1090).

It is urged, but not by counsel in the case, that the act under consideration violates Article IV, section 23 (subdivision 7) of the Oregon Constitution, providing that the legislative assembly shall not pass any special or local laws "for laying, opening, and working on highways". We are not concerned with an appropriation for the building of a county road, as was involved in *Sears v. Steel,* 55 Or. 544 (107 P. 3), and *Maxwell v. Tillamook County,* 20 Or. 495 (26 P. 803). The appropriation in the instant case concerns a highway taken over by the state highway commission and over which it has complete jurisdiction. Relative to *Sears v. Steel,* supra, and *Maxwell v. Tillamook County,* supra, this court, in *Stoppenback v. Multnomah County,* supra, said:

"It was formerly held that any act of the legislative assembly, appropriating money to be used in any county of this state, to build a public road was a special and local law for laying, working and opening highways, and therefore violative of Article IV, Section 23, subdivision 7, of the state Constitution: Maxwell v. Tillamook County, 20 Or. 295 (26 Pac. 803); Sears v. Steel, State Treasurer, 55 Or. 544 (107 Pac. 3). Since these cases were decided, and evidently to overturn the effect thereof, Article XI, Section 7 of the Constitution of this state has been amended so as to read:

" 'The legislative assembly shall not lend the credit of the state nor in any manner create any debt or liabilities which shall singly or in the aggregate with previous debts or liabilities exceed the sum of fifty thousand dollars, except in case of war or to repel invasion or suppress insurrection or to build and maintain permanent roads; and the legislative assembly shall not lend the credit of the state nor in any manner create any debt or liabilities to build and maintain permanent roads which shall singly or in the aggregate with previous debts or liabilities incurred for that purpose exceed 2 per cent of the assessed valuation of all the property in the state; and every contract of indebtedness entered into or assumed by or on behalf of the state in violation of the provisions of this section shall be void and of no effect': Gen. Laws Or. 1913, p. 8.

"The reason for invoking the provisions of Article IV, Section 23, subdivision 7, of the organic law to defeat legislative appropriations to build public roads need not now be mentioned, for they have been set forth in former opinions: Allen v. Hirsch, 8 Or. 412, 425; Sears v. Steel, State Treasurer, 55 Or. 544, 552 (107 P. 3). Whatever ground may have been assigned for the conclusion thus reached is unimportant for the subdivision of the section of the Constitution referred to as a basis therefor was impliedly repealed by the amendment of Article XI, Section 7 of the Constitution."

The order of the lower court directing the issuance of the peremptory writ of mandamus is affirmed.

BEAN and KELLY, JJ., concur.

---

BAILEY, J., specially concurring.

"In determining the validity of an act which has been attacked, the courts must and should resolve all doubt in favor of its constitutionality; and if the statute is reasonably susceptible of two constructions, one of which will render it constitutional and the other

unconstitutional, the former will prevail. Unless the nullity and invalidity of the act are placed beyond reasonable doubt in the judgment of the courts, the act will not be declared void.'' *Anderson v. Thomas,* 144 Or. 572 (26 P. (2d) 60).

The act here in question applies to two highway improvement districts, to wit: Salmon River-Grande Ronde highway improvement district, which has constructed the Salmon River Cutoff highway between Valley Junction in Polk county and Otis in Lincoln county, and the Umpqua highway improvement district, which has constructed the highway between Drain and Reedsport in Douglas county. Both of these highways have been taken over by the state highway commission and incorporated into our state highway system, of which they are an important part.

Both highways were built under the direct supervision of the highway commission, and the highway specifically referred to in this litigation, i. e., the Salmon River Cutoff, was constructed according to the standards and specifications of a state highway.

There is nothing in the pleadings to indicate that any highway improvement districts other than the two mentioned in the act under review have been organized in this state pursuant to chapter 399, Laws 1921. It was, however, stated in the oral argument that one or two other such districts had been organized but that the road construction done by them was inconsequential. Moreover, there is nothing in the record to indicate that the road construction done by road districts, other than the two mentioned in this act, was of any benefit to the state, or that it was not local in nature instead of an integral part of the state highway system, as are these two highways, or that such con-

struction has been taken over by the state highway commission.

With these meager facts before us, how then can we say that the act in question, although it mentions only two road improvement districts, is not general in character and does not apply to all road districts similarly situated and organized? Are we to discard the presumption that the acts of a coordinate branch of the government are constitutional, by assuming that certain facts may or may not exist? Are we not reversing the order and requiring those who rely on the validity of the act in question to prove beyond a reasonable doubt that it is constitutional, instead of requiring those who assail it to point out the specific constitutional provision with which the act is clearly in conflict?

An investigation, however, discloses that there are in fact two other improvement districts which have been organized under the 1921 statute to which reference has been made. These are the Diamond Lake and Nestucca districts. One of those districts has constructed a short road for local convenience and the other district is attempting to build what would probably be considered a local road. It would not appear that either of such road projects is an important link in a state-wide highway system. They have not been taken over by the state highway commission and probably will not be, unless all the roads in the state are brought under the jurisdiction of the commission.

Road improvement districts like the one in question are entirely different and distinct from the several counties of the state. Property owners in these road districts pay their proportionate share toward the construction and maintenance of county roads and

state highways, and in addition thereto have contributed a considerable sum of money toward the acquisition and construction of highways which are by no means local in character or in their use.

If we were to follow the reasoning of Mr. Justice ROSSMAN in his construction of the decision in *Baker v. Hickman County,* 164 Tenn. 294 (47 S. W. (2d) 1090), we should of necessity be compelled to hold that the various legislative acts under which our highway system has been constructed and maintained are unconstitutional as "conferring benefits upon some not equally available to all".

Multnomah county was for a long time excluded from the benefit of the bond issues for road construction and the revenues derived from motor vehicle licenses, and the tax on gasoline retained by the state was spent for many years by the state highway commission, by mandate of the legislature, in all the counties of the state of Oregon except Multnomah, in the construction and maintenance of highways.

Moreover, if such construction is to be given to Article I, section 20 of our constitution, how can we justify the highway commission's taking over some of the roads built by some of the counties, such as the Columbia River highway in Multnomah county, and agreeing to maintain them, unless it takes over all the highways in all the counties under the same conditions? Is not the agreement by the state through the highway commission to maintain certain highways and not others "conferring benefits upon some not equally available to others", as much so as was effected by the act in question? It is certainly a benefit to the citizens of a county to be relieved of the expense incident to the upkeep of some of its highways.

The act in question is in nowise a law "for laying, opening or working on highways". The legislative acts assailed in both *Maxwell v. Tillamook County,* 20 Or. 495 (26 P. 803), and *Sears v. Steel, State Treasurer,* 55 Or. 544 (107 P. 3), provided for the appointment of commissions to supervise and direct in each instance the construction of a particular highway. The purpose of the inhibition contained in subsection 7 of section 23, Article IV, of our constitution is well set forth in *Maxwell v. Tillamook County,* supra, as follows:

"It is, however, manifest from the construction given to these words special or local, as applied to statutes, that the purpose of the prohibition against the general assembly passing local or special laws in the enumerated cases, including the laying out of highways, was to secure a harmonious system of general laws upon these subjects, and to avoid the mass of incongruous acts, each applying to some limited portion of the state, or some particular individual or special case, as would inevitably result. This would prevent any distinction in the operation of laws between different localities, as well as between persons or things in respect to these subjects. It would require as to these matters that they should be regulated by general laws of uniform operation throughout the state. Turning now to the act in question, it is entitled an act to appropriate ten thousand dollars to aid Tillamook county in the construction of a wagon road wholly within its boundaries. It appropriates the money for that purpose out of the general fund of the state. It appoints the commissioners and viewers to locate the road, authorizes them to employ some suitable person to superintend its construction, provides that the expense of damages and locating the road shall be paid out of the county funds, and makes provision for the payment of ten thousand dollars on the completion of the road. It is thus seen that the law applies and operates exclusively in that limited portion of the state known as Tillamook county."

If it is proper for the state to appropriate to its highway system a suitable county road and to pay the county the actual cost of such road, as was done in *Mitchell v. Lowden,* 288 Ill. 327 (123 N. E. 566), what constitutional objection could there be to the state's taking over some road built according to its standards and specifications and under its direction and supervision by some road district, and reimbursing the road district for a trifle over half of the actual cost of such road? The state highway commission undoubtedly had the right to condemn this particular highway, as the state is superior to any of its subdivisions, and if it had resorted to eminent domain the state undoubtedly would have paid a great deal more than it is required to pay under the act in question. If the state highway commission could have singled out such a highway and have thus acquired it, the legislature undoubtedly could have provided by law for its acquisition. If this road could have been acquired by condemnation, it could, under authority of law, be acquired by purchase.

The mere fact that this road had been taken over and made an important connecting link in the state highway system prior to the passage of this act does not render invalid the appropriation made by the legislature to the road improvement district to reimburse the district in part for the actual cost of the road. There is nothing, in such a case, to prevent the legislature from considering that the state, charged with the duty and responsibility of constructing and maintaining a comprehensive highway system, is morally bound to make such an appropriation. The authorities are legion that moral obligation alone is sufficient to sustain legislative appropriation.

Both of the dissenting opinions seem to hold that the act in question is unconstitutional because it is

not, according to the views therein expressed, general. If by general laws the legislature can, as the writers of those opinions seem to intimate, reimburse the counties for the $25,000,000 which they have paid toward the construction of roads which now form a part of the state highway system, we can look only to the sound judgment of the members of the legislature to steer clear of the yawning abyss which has been opened by these dissenting opinions in an attempt to prevent the payment of a trifle more than one-half of what it would have cost the state to acquire the right of way and construct the roadbed of what it considers a vital part of a great system of highways. It is not, however, necessary to cross other bridges until we reach them. Suffice it to say that the courts have nothing to do with the wisdom of legislation or the policy of the state.

The decree appealed from should be affirmed.

---

CAMPBELL, J. (dissenting). This is a mandamus proceeding in which the plaintiff seeks to compel the state highway commission to pay it a sum of money in accordance with the provisions of chapter 298, Oregon Laws, 1933.

The plaintiff is organized under chapter 399, General Laws of Oregon, 1921, being an act,

"To provide for the incorporation under general law of highway improvement districts consisting of contiguous territory; to provide for the organization of such districts, for the appointment and election of officers, authorizing such districts to levy taxes, borrow money, issue bonds; to authorize the laying out, construction, improvement and maintenance of highways within such districts; and declaring an emergency."

The corporate powers conferred upon a municipal corporation, organized under this act, are to be exercised through a board of trustees. The power of the board of trustees, regarding the laying out, opening and construction of highways, is rather limited. It is found in section 26 of the said act, as follows:

"Section 26. The board of trustees of any such district may recommend to the state highway commission the location, opening up, laying out, construction or improvement of roads within such district. Upon receiving a request therefor, it shall be the duty of the state highway commission to proceed to a survey and definitely locate such road or roads at the expense of said district or municipality. Said state highway commission shall also prepare the plans and specifications for the construction of any such road and submit the same to the board of trustees of such highway district. Upon the approval of the definite location of any such proposed highway and of the plans and specifications for the improvement or construction thereof by the state highway commission and by the board of trustees of such highway district, it shall then be the duty of the state highway commission to proceed with the construction or improvement of any such road the same as the construction of any state highway, but to the extent only of the funds in the hands of the state treasurer to the credit of any such corporation. Upon certificate from the state highway commission of the amount of money due upon any such improvement, including the making of plans and specifications, location and survey, it shall be the duty of the president and secretary of such corporation to draw an order upon the state treasurer in favor of the state highway commission for the amount of money so certified to be due for such construction or improvement, including the making of the location and survey, and the plans and specifications."

The plaintiff was organized in the year 1926, and proceeded according to law to construct highways, and

to create indebtedness by issuing bonds, of which, according to the stipulation of counsel, there remains unpaid of said bond issue the sum of $120,000, and that said bond issue places an extremely heavy burden upon the taxpayers of said highway improvement district in excess of that contemplated at the organization of said district which, under the present conditions, it is impossible for the taxpayers to meet.

It appears that there was constructed, by the plaintiff, a road between Valley Junction in Polk county and Otis in Lincoln county, of standard construction and state highway specifications. About the time the road was completed, the state highway commission took it over and made it a part of the state highway system. In 1933, the legislature, at its regular session, enacted chapter 298, Oregon Laws, 1933, which, after several plausible *"whereases"*, provided, "The state highway commission is hereby authorized, empowered and directed to pay to the Salmon River-Grand Ronde Highway Improvement district, in cooperation and as a contribution toward the building and construction of said Salmon River Cutoff highway, out of the state highway funds, the following amounts at the times stated, to wit: March 15, 1933, $3,150.29 * * *". Then follows fixed installments to be paid semi-annually until the whole of the bond issue and accruing interest is paid.

Upon presentation by the board of trustees of the district, of its claim for the first installment, the state highway commission refused its approval.

The sole question involved in this suit is the constitutionality of said chapter 298.

It is stipulated by counsel:

"That it was the original plan of said Salmon River-Grand Ronde Highway Improvement District

to build a road according to market road standards and specifications between the end of the county road about a mile west of Grand Ronde in Polk County, and the end of the County road about five miles east of Rose Lodge, in Lincoln County, a distance of approximately ten miles, at an approximate cost of $35,000.''

It is further stipulated in effect, that the state highway commission refused to proceed with such a standard and provided plans and specifications for a standard state highway, and the district built the road according to the plans and specifications of the state highway commission.

There are several other stipulations of counsel but the net result and the facts are, that the plaintiff undertook to construct a certain highway according to the provisions of the act under which they were incorporated, and in doing so created a debt which it now claims is burdensome and which the legislature, by virtue of chapter 298, Oregon Laws, 1933, assumes and agrees to pay.

It is no argument to say that the board of trustees only intended to build a market road and was compelled by the state highway commission to build a standard state highway. The board knew the law under which it was organized. It had the plans and specifications for the construction of the highway submitted for its approval before the construction was begun. It should not now be heard to complain of the consequences of an undertaking voluntarily engaged in with full knowledge and information of its requirements.

It is also argued that the state does not assume the debts of the municipality because one legislature has no control over the actions of the next and that

some future one may repeal the law (chapter 298, Oregon Laws, 1933). We are not being asked to pass upon future payments, except indirectly; we are asked to mandamus the state (through the state highway commission) to pay the installment due this year, the one that fell due March 15, 1933.

The argument is made that the money was expended by the plaintiff for a public purpose and that the road is for the use of all the people in the state. That same argument would apply with equal force to every public highway, street and alley, legally laid out or dedicated to the use of the public in the state.

The argument is also made that it is the primary duty of the state to build and maintain adequate public highways and unless prohibited by the fundamental law, may itself discharge the trust or delegate the duty to a municipality or quasi-municipality. *Bank of Idaho v. Malheur County,* 30 Or. 420 (45 P. 781, 35 L. R. A. 141) ; *Yocum v. City of Sheridan,* 68 Or. 232 (137 P. 222) ; *Stoppenback v. Multnomah County,* 71 Or. 493 (142 P. 832). All highways laid out by the state, or by any municipality to which such power has been delegated, are for the use and benefit of the public, and the use of them at all times may be controlled by the legislature. But the fundamental law of the state of Oregon prohibits the ''laying, opening or working of highways'' except by general law. This is an inhibition laid on the legislature by the constitution.

The language of the constitution is, ''The state shall never assume the debts of * * * any corporation.'' This means any part of such debts. To say, that because the law might be repealed before the entire debt is paid means that the state does not assume the debt, is a strained construction of the word

"assume". "What may not be done directly may not be done indirectly", is a rule of law frequently expressed and followed by this court. This maxim may well be enlarged by saying that the inhibitions of the constitution may not be overcome by evasion. It matters not how skillfully or shrewdly the act transferring the debts of the municipality to the state may be worded, nor how sugar-coated the proposition may be, yet the ordinary citizen and taxpayer knows that the act simply shifts the burden of payment from those who voluntarily created and agreed to pay it to those upon whom the constitution provides it shall not be placed. All the *"whereases"* by which the real purpose is attempted to be concealed can not change its meaning and effect. The word *"assume"* in the above provision of the constitution is presumed to have been used in its "primary and general acceptation". Oregon Code 1930, § 9-217. The Standard dictionary (Funk & Wagnalls) gives its meaning: "To take or put on one's self; take up; take on; adopt." Webster's International Dictionary defines it: "To take upon one's self (to do or perform); to undertake; * * *."

The writer is of the opinion that chapter 298, Oregon Laws, 1933, violates section 8, Article 11 of the Oregon Constitution, and also violates subsection 7, of § 23, Article 4 of the Oregon Constitution, which provides against special and local laws "for laying, opening or working on highways * * *". If this court was right in *Maxwell v. Tillamook County,* 20 Or. 495 (26 P. 803), and in *Sears v. Steel, State Treasurer,* 55 Or. 544 (107 P. 3), then this act is special and local and has to do with laying, opening and working on highways. What the framers of the constitution had in mind, in regard to these activities, was as much

the payment for such work as the actual doing of the work. *Stoppenback v. Multnomah County,* supra; *Kinney v. Astoria,* 108 Or. 514 (217 P. 840); and *Rockhill v. Benson,* 97 Or. 176 (191 P. 497), do not overrule those cases.

"In determining this question, we will first consider the intent with which this provision was placed in our constitution and the mischief which it was designed to remedy or prevent. Under the provisional government as early as June 22, 1844, Oregon had a system of laying out and locating highways, probably taken from the Iowa Code, and in 1847 an act was passed by the provisional legislature providing for a complete system of road work with supervisors who reported to the county commissioners, and which, in its general scope, was not essentially different from methods now in vogue. But at this early date, the provisional legislature seems habitually to have created territorial roads and appointed commissioners to locate and lay them out. Thus, we find an act passed December 12, 1846, appointing commissioners to locate and lay out a territorial road from the 'town of Portland on the Willamette River' to the mouth of Mary's River in Polk County. Another, to authorize the laying out of a territorial road from Oregon City to the 'Calipooyah' River. Another, from Oxford on the Willamette to John McCoy's farm on Muddy Creek in Linn County. Another from 'Linn City to Zed Martis'. Another, to improve and open the road 'known as the southern route leading from the United States to Oregon'. The employees on this enterprise were prudently required to furnish their own tools, 'arms and ammunition'. Another act provided for a public road from 'Multnomah City' to the mouth of Mary's River. Still another, authorized the location of a territorial road from 'Tuality Plains to Clatsop Plains'. Passing over the intervening years till the session of the territorial legislature of 1850-51, we find eight special acts authorizing the laying out of territorial roads in various parts of the territory, all passed within the space

of less than a month, indicating that the practice of logrolling among the fathers of the State was not confined entirely to that specie of the employment necessary in clearing up their farms. It is a well-known fact that few of these roads, which, in the aggregate, must have cost the infant community a considerable sum of money for laying out and working, were ever of any practical value or use, beyond the emoluments they furnished to the commissioners and surveyors designated to select the route. Under these circumstances, it was no doubt thought by the framers of the constitution that it would be well to divorce the State from the business of special road building, and leave that matter to be attended to by the counties under general laws. * * * In Crawford v. Linn County, 11 Or. 499 (5 Pac. 738), Mr. Chief Justice Waldo calls attention to the fact that it was not claimed in Allen v. Hirsch that the act was local, but that it was special, which is an entirely different matter. The decision of the court in Allen v. Hirsch seems to have opened the way for legislation of a similar character. In the session laws of 1885, we find an act appropriating $15,000 for the construction of a wagon road from a locality, bearing the significant name of 'Hogem', to Cornucopia, in Union County. The act contains all the necessary 'whereases', as to its public and general character, that were indicated by the court in Allen v. Hirsch, and no action seems to have been taken to prevent the expenditure of the money. The legislature of 1889, taking the cue from the decision in Allen v. Hirsch, passed nine road bills, appropriating sums varying in amounts from $8,000 to $15,000 and aggregating considerably above $100,000, seeming to fairly open up the flood gates for the unlimited increase of such appropriations, until the decision of this court in Maxwell v. Tillamook County, 20 Or. 295 (26 Pac. 803), which arrested further appropriations of this character until the last session of the legislature. Since we consider that case decisive of the one at bar, we shall briefly consider the points suggested and decided therein.'' Sears v. Steel, State Treasurer, supra.

In *Stoppenback v. Multnomah County,* supra, the question at issue was whether the legislature could authorize the state to contribute to the cost of certain fills leading to the interstate bridge across the Columbia river to Vancouver, Washington—a bridge, which, as soon as built and paid for out of the tolls collected thereon, should become the property of the state. This court intimated that subsection 23 of section 7 of Article 4 of the Constitution of Oregon had been impliedly repealed or superseded by Article 11, section 7, Id., adopted in the election of 1912. This holding was not necessary to the determination of the case and should be taken only as dicta. It could not be considered that section 7 of Article 11, permitting the state to lend its credit for the building of permanent highways, is repugnant to the provision prohibiting the laying out, opening or working on highways by special or local law, but would indicate that when the state, through the legislature, exercised the privilege of lending its credit for that purpose, it should be done by a general and not a special or local law.

Neither are these two provisions inconsistent with each other. Each provision was intended to prevent certain evils that might grow up or to remedy evils already existing.

In the same opinion, the court says, regarding the construction of statutes:

"Where statutes are not repugnant to or inconsistent with each other they should be construed *in pari materia:* McLaughlin v. Hoover, 1 Or. 32; Winter v. Norton, 1 Or. 43; Miller v. Tobin, 16 Or. 540 (16 P. 161); Smith v. Kelly, 24 Or. 464 (33 P. 642). This rule is particularly applicable when in the case of two enactments one is the complement of the other, * * *: Barringer v. Loder, 47 Or. 223 (81 P. 778)."

If this is the correct construction to be placed on statutes, it would apply much more forcibly to the provisions of the constitution. Provisions in the constitution are not repealed by implication, neither should they be rendered nugatory by judicial fiat unless the inconsistency or repugnancy is so plain and so palpable that it is impossible to reconcile one with the other.

, *Mitchell v. Lowden,* 288 Ill. 327 (123 N. E. 566), was a case where the Supreme Court of Illinois was construing a general statute. It used the following language:

"Section 10 of the act provides that the department of public works and buildings may make use, in the construction of the roads, of any paved road of a proper, durable, hard-surfaced type which may have been constructed by any county and the state, or by the county alone and accepted by the state, and in such case an amount of money equal to the share of the actual cost of such paved road paid by the county shall be allotted to the county, to be used, at the option of the county, either in the payment of any bonds issued by the county and used to improve its state-aid roads, or in the improvement of its state-aid roads by the construction thereon of a durable, hard-surfaced road under the direction and to the satisfaction of the department of public works and buildings."

This clearly shows that the law was general and applicable to all such similar conditions.

The writer is firmly of the opinion that the provisions of the constitution, above referred to, were especially intended to prohibit the kind of legislation enacted as chapter 298, Oregon Laws, 1933.

"For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be

placed in the position of those whose language he is to interpret." Oregon Code 1930, § 9-216.

I do not wish to be understood as saying that the state could not take over certain roads and incorporate them into the state highway system and in doing so make allowance to the district that built the roads, but that may only be done by a general law made applicable to all districts where the facts are the same.

The judgment should be reversed and the writ dismissed.

RAND, C. J., concurs in this opinion.

---

ROSSMAN, J. (dissenting). Article I, section 20, Oregon Constitution, provides:

"No law shall be passed granting to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

It is conceded that there are three or four other municipal corporations of the same type as the Salmon River-Grande Ronde Highway Improvement District created also under the provisions of 1921 Session Laws, chapter 399. Upon oral argument, we were informed that the counties of our state owe approximately $25,000,000 upon debts incurred in the construction of roads which now constitute portions of the state highway system under the jurisdiction of the state highway commission. We are, therefore, confronted with an act which singles out one municipal corporation and grants to it a privilege which is not available to any other, although it is known that others are in substantially the same debt condition as the favored one. In order to point out the invalidity of this act, we need only turn to one of the decisions cited ap-

provingly by the majority; it is *Baker v. Hickman County,* 164 Tenn. 294 (47 S. W. (2d) 1090). The pertinent facts of that case were that the Tennessee legislature had enacted a law assuming the bonded debts incurred by Hickman county in the construction of highways which had become a part of the state highway system. Article 11, section 8, of the Tennessee Constitution, prohibited the legislature from suspending the general law for the benefit of particular individuals, and from enacting laws conferring benefits upon some not equally available to all. Thus, it is seen that this portion of the constitution is not dissimilar from Article I, section 20, of the Oregon Constitution. In holding the above enactment invalid, the court pointed out:

"Conceding, therefore, the constitutional power and authority of the General Assembly to transfer the entire burden of the cost of the state highways to the State, we have yet to consider the original contention of the Attorney-General that the Act of 1929, chapter 145, is rendered void and unenforceable by article 11, section 8, of the constitution, in that it operates to suspend the general law for the benefit of Hickman County, and confers upon Hickman County rights and privileges not extended to other counties in like situation.

"It appears to us rather obvious that the Act of 1929 does confer upon Hickman County rights which are denied other counties which may have expended money in the construction of roads subsequently made a part of the State Highway System. * * *

"We have recognized the validity of special acts affecting a particular county in its governmental capacity or functions. Redistricting Cases, 111 Tenn. 234, 272-283, 80 S. W. 750; State ex rel. v. Cummings, 130 Tenn. 566, 172 S. W. 290; Stokes v. Dobbins, 158 Tenn. 350, 13 S. W. (2d) 321. But in matters affecting the proprietary rights of counties, the cases have

recognized that statutes conferring special benefits upon a particular county unduly favor the citizens of that county, to the prejudice of the citizens of other counties, and in violation of article 11, section 8, of the Constitution. State v. Burnett, 53 Tenn. (6 Heis.) 186; Weaver v. Davidson County, 104 Tenn. 315, 59 S. W. 1105; State ex rel. v. Cummins, 141 Tenn. 318, 210 S. W. 161; State ex rel. v. Stewart, 147 Tenn. 375, 247 S. W. 984; Berry v. Hayes, 160 Tenn. 577, 28 S. W. (2d) 50. * * *

"The State, having embarked upon a legislative policy of reimbursing its counties for their contributions toward the cost of the highway system, could only execute this policy by general law applicable alike to all counties. It could not have excluded Hickman County from the benefits conferred upon all other counties, and by the same rule it may not, in pursuance of such general policy, confer upon that county privileges which by the general law are denied to the others.

"We conclude therefore that the special law, Acts 1929, chapter 145, is in conflict with the Constitution of the State, article 11, section 8, and therefore void and unenforceable, and a declaration to that effect will be made the decree of this court. Costs of the cause will be adjudged against Hickman County."

The state can not lawfully bestow favors, and this single objection is sufficient to deny validity to the act before us.

The authorities upon which the majority depend to substantiate their conclusion that this act does not constitute an assumption of a debt within the contemplation of Article 11, section 8, of our Constitution do not sustain their position. The act under attack in *Stoppenback v. Multnomah County*, 71 Or. 493 (142 P. 832), authorized counties to construct bridges over rivers forming interstate boundaries, that is, over the Columbia river, and provided that, having constructed such a bridge, the county could deduct from the amount of taxes which it must annually collect and pay to the

state the amount of the annual interest charge upon any bonds which it had issued to enable it to pay for the construction of the bridge. The act next provided:

"In consideration of such allowance and deduction for the payment of said annual interest upon said bonds, as herein provided, the title to the said bridge, viaduct or roadway and the full control of the same shall upon completion of said boundary or interstate bridge, viaduct or roadway be and become vested in the State of Oregon."

It is at once apparent that no debt was in existence when that act was passed. That act merely provided a means whereby the state lent its credit to any county which desired to build an interstate bridge. The bridge, upon completion, became the property of the state. The loan of the state's credit in support of the interest coupons, and the delivery to it of the bridge were simultaneous acts. If the legislature were now to assume payment of the bonds themselves, the situation would be similar to our present case. The act under attack in *Kinney v. Astoria,* 108 Or. 514 (217 P. 840), was enacted by the legislature after much of Astoria's public property had been destroyed by a great fire which had rendered the city prostrate. The act authorized the city to withhold for a period of seven years' time all state taxes collected upon property within the corporate limits of the city "to be used exclusively for rebuilding, reconstructing and replacing public property in the city of Astoria". In rejecting the suggestion that this enactment violated Article 11, section 8, the decision pointed out: "No bonds had yet been issued and no debt incurred for replacing public property when chapter 280 was enacted, and moreover we are informed that no such bonds have even yet been issued." The act under consideration in *Mitchell v. Lowden,* 288 Ill. 327 (123 N. E. 566), authorized the

Illinois Department of Public Works to provide the
state with a system of public highways; to sell $60,-
000,000 of highway bonds; and wherever it found a
suitable county road to appropriate the same upon pay-
ment to the county of a sum "equal to the share of the
actual cost of such road". It is evident that the state
was not assuming any debt when it acquired a county
road. Possibly the county whose road was taken owed
no debt whatever; if it was in debt, the size or character
of it was immaterial. The act merely provided a means
whereby the state could acquire and pay for roads.
Acceptance of the road and payment to the county
were simultaneous acts. It is hard to understand why
the majority cites *Baker v. Hickman County,* supra.
The decision in that case nowhere makes any mention
of a constitutional provision against assumption of
debts, but the decision expressly states that the purpose
of the act is to transfer to the state the debts incurred
by counties for roads which have become a part of the
state's highway system.

In our present instance, we have the following
order of events: (1) The district incurred the debt;
(2) the road was built; (3) the state assumed charge
of the road; and (4) finally, the state assumed the debt.
It will be observed that the only decision with facts
similar to the above *(Baker v. Hickman County)* upon
which the majority depends construes the act as the
assumption of a debt.

But, regardless of whether it is an assumption of
the district's debt by the state, I feel clearly satisfied
that the act contemplates the bestowal of a favor upon
one district in violation of the above constitutional pro-
vision. This precedent will enable all debt-burdened
municipalities to apply for individual favors. I, there-
fore, dissent.