SUN COAL COMPANY *v.* THE STATE.

(*Knoxville,* September Term, 1928.)

Opinion filed December 8, 1928.

1. CONSTITUTIONAL LAW. POLICE POWER. HEALTH.

In considering statutes enacted under the police powers of the State, if a state of facts may be reasonably conceived which justifies such legislation, courts will assume the existence of such state of facts. (Post, p. 524.)

Citing: Motlow v. State, 125 Tenn., 547; Scott v. Nashville Bridge Co., 143 Tenn., 86, 108.

2. CONSTITUTIONAL LAW. POLICE POWER COAL MINING INDUSTRY.

Legislation affecting coal mining industry alone **held** reasonable classification in view of peculiar conditions incident to that industry. (Post, p. 525.)

Constitution cited: Art. 1, sec. 8; Art. 11, sec. 8.

Cases cited: Scott v. Nashville Bridge Co., **supra.**

3. CONSTITUTIONAL LAW. POLICE POWER. COAL MINING.

Classification separating coal mines into classes of mines employing fifty miners and over, and mines employing less than fifty miners, **held** to rest on reasonable basis. (Post, p. 525.)

Constitution cited: Art. 1, sec. 8; Art. 11, sec. 8.

Cases cited: Miller v. Strahl, 239 U. S., 426; McLean v. Arkansas, 211 U. S., 539.

4. **CONSTITUTIONAL LAW. POLICE POWER. COAL MINING.**

Hardships of law and incidental effect of statute on parties affected thereby, addresses itself to legislative discretion and presents no ground for judicial relief where the statute but indirectly affects the relations between coal operators and their customers or competitors. (Post, p. 526.)

Cases distinguished: Cotting v. Kansas, 183 U. S., 79.

5. **CONSTITUTIONAL LAW.**

One not adversely affected by certain provisions of legislation cannot attack such provisions. (Post, p. 526.)

Citing: Hyde v. State, 131 Tenn., 208, 215.

6. **CONSTITUTIONAL LAW. POLICE POWER. HEALTH. COAL MINES.**

Statute requiring operators of coal mines employing more than fifty persons to provide suitable building equipped with shower baths and lockers for the employees, **held** to be constitutional. (Post, p. 527.)

Citing: Ch. 24, Acts of 1921.

---

## FROM CAMPBELL.

---

Appeal from the Circuit Court of Campbell County.— HON. W. H. BUTTRAM, Judge.

H. B. LINDSAY, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

By the provisions of chapter 24 of the Public Acts of 1921, operators of coal mines, employing more than fifty persons, are required to provide a suitable building, equipped with shower baths and lockers, for the use and benefit of employees.

The Sun Coal Company, having been found guilty of a misdemeanor for failure to comply with this statute, has attacked its constitutionality by appropriate assignments of error.

It is first contended that the requirements of the statute are in violation of article 1, section 8, and article 11, section 8, of the Constitution of Tennessee, and of the Fourteenth Amendment to the Constitution of the United States, in that the statute is partial in its application, creating a class not founded upon any reasonable basis for classification, and arbitrary. It is contended that the Legislature was without power to make the requirement of operators of coal mines, while not including in its application operators of other kinds of mines, foundries and manufacturing plants. It is urged also that the classification is arbitrary in that the statute is not made to apply to coal mines in which less than fifty employees are engaged.

*(1)* The statute is clearly an exercise by the Legislature of its police power. In its caption the statute is described as one "to promote the health of employees by requiring wash houses to be provided at coal mines."

If any state of facts can reasonably be conceived which would require special protection of the health of employees of coal mines in this respect, we are required to assume the existence of that state of facts at the time the law was enacted. *Motlow* v. *State,* 125 Tenn., 547; *Scott* v. *Nashville Bridge Co.,* 143 Tenn., 86, 108.

*(2)*  The extent of the industry, the number of employees engaged in coal mining, the financial ability of the industry to comply with the regulation, the conditions under which such employees are required to work, the general state of health of coal miners, the percentage of mortality among coal miners, the effect of coal dust upon the health of the miners, are all circumstances which may well be conceived as influencing the Legislature in the enactment of the statute.  If, upon consideration of these and other aspects of the industry, the Legislature determined that the regulation was necessary to the preservation of the health of coal miners, the courts of the State are without power to review the exercise of legislative discretion and to say that the regulation was neither necessary nor   desirable in the interest of the public welfare.  Certainly we could not say as a matter of judicial knowledge that the same conditions which impelled the Legislature to enact the statute exist in equal degree in other mining or manufacturing enterprises.

In *Scott* v. *Nashville Bridge Co.*, 143 Tenn., 86, 110, this court said:

"It is well-known legislative history that in this State coal mines have been dealt with independently by the Legislature, and that many statutes have been enacted relating to coal mines that have no relation to any other industry in the State."

Legislation designed to protect the health of coal miners cannot be said to be founded upon an arbitrary classification, because it is not extended to other industries, in which the Legislature may have found that working conditions were dissimilar.

*(3)*  Nor can we say that the failure to make the statute applicable to mines in which less than fifty employees

are engaged is an arbitrary or unreasonable classification.

As pointed out on the brief of the learned Assistant Attorney-General, even though the health of the employees in a smaller mine should be accorded the same protection, the expense of compliance with the statute may have been regarded by the Legislature as too great a burden to be required of the smaller mine, and this consideration would furnish a reasonable basis for the classification. Other reasonable grounds for similar classifications in statutes enacted under the police power have been pointed out in judicial opinions. *Miller* v. *Strahl*, 239 U. S., 426; *McLean* v. *Arkansas*, 211 U. S., 539.

(4) If the cost of compliance with the statute will increase the cost of mining coal in the larger mines, so as to put them at a disadvantage in competition with smaller mines not included in the statute, the hardship is one which the Legislature must be deemed to have weighed in their consideration of the policy involved. It is not an argument against the validity of the statute or the power of the Legislature to enact it. The statute does not directly affect the operators of mines in their contact with their customers or competitors, as was true with regard to the legislation considered by the Supreme Court of the United States in *Cotting* v. *Kansas*, 183 U. S., 79, 46 L. Ed., 92, which is the principal authority cited for the Coal Company here. The possible discrimination against the larger mines required to comply with the statute is an indirect effect of the statute which cannot affect the reasonableness of the classification made for the protection of the health of mine employees.

(5) Section 5 of the statute (Acts 1921, chapter 24,) provides "that all wash houses erected as hereinbefore

described shall be so arranged as to provide separate wash houses for Whites and Blacks, in the discretion of the Chief Mine Inspector.''

This provision of the statute is assailed as an unwarranted delegation of legislative authority to the Chief Mine Inspector, since the statute expresses no general rules for the guidance and control of the exercise of his authorized discretion.

The indictment upon which the plaintiff in error was convicted in this case makes no reference to a failure to provide separate wash houses for the white and colored employees of the Company. The indictment simply charges that the Sun Coal Company did unlawfully fail and refuse to provide a suitable building and wash house, etc. There is nothing on the record to•suggest that the plaintiff in error had received any notice from the Chief Mine Inspector that separate wash houses should be provided, or that the Inspector had made any such rule on the Company.

In these circumstances we are of the opinion that the plaintiff in error cannot invoke the decisions of this court upon the validity of the provision vesting the Mine Inspector with this discretion. Plaintiff in error is not adversely affected by it, so far as the issues of the case at bar are concerned. *Hyde* v. *State,* 131 Tenn., 208, 215, and cases there cited.

(6) The statute, in our opinion, is constitutional and valid, and the judgment of the circuit court will be affirmed.