Oehmig *v.* City of Chattanooga.

(*Nashville*, December Term, 1934.)

Opinion filed March 20, 1935.

WHITAKER & WHITAKER and BROWN & SPURLOCK, all of Chattanooga, for appellant.

J. W. ANDERSON, of Chattanooga, for appellee.

MR. JUSTICE COOK delivered the opinion of the Court.

This proceeding under the declaratory judgments law presents an inquiry into the constitutionality of chapter 743, Private Acts of 1933, amending chapter 150, Private Acts of 1929. The chancellor sustained defendant's demurrer to the bill and declared the amendatory act void. He held that it was violative of article 2, sections

28, 29, of the Constitution, because it authorized the application of unexpended municipal funds to the relief of taxpayers from special assessments for street improvement within the limits of Riverview.

The object of the original act was to extend the corporate limits of Chattanooga so as to include six suburban communities, among them the incorporated towns of North Chattanooga and Riverview. Annexation was made dependent upon the favorable vote of citizens in the towns of North Chattanooga and Riverview at an election provided for by section 2 of the annexation act.

By section 5 (b) it was provided that upon the event of annexation the proceeds of bonds provided for in section 4 should be used, among other things, to make a road in Riverview, paved with oil or better material, on a course east of Barton avenue, from the intersection of Frazier avenue and Barton avenue to the intersection of Young and Tremont streets. It is indicated by the record that this road was to pass through new territory.

By section 4 it was provided that in order to defray the costs of municipal improvements within the annexed territory the bonds of Chattanooga should be issued for an amount which added to the total of outstanding indebtedness of the annexed town would not exceed 10 per cent. of taxable property therein. It is shown by the bill that the town of Riverview and the town of North Chattanooga voted for annexation and both were included in the corporate limits of Chattanooga.

It is stated that pursuant to an agreement and a provision of the annexation act the city sold $107,000 of bonds to pay for the improvements required by section 5 (b) of the act, among others, for the construction of the new road east of Barton avenue. Before any ex-

penditure was made upon that road, other street improvements made by the city of Chattanooga afforded sufficient outlet for Riverview over Barton avenue and made the new road unnecessary. In that situation it was agreed by a committee representing Riverview and the officials of the city of Chattanooga that the new road would be abandoned and the city make additional improvements on Barton avenue with a portion of the fund set apart for the construction of the new road; that citizens of Riverview chargeable with special assessments upon their property to build and improve Barton avenue should be relieved of their assessments and any installments paid should be refunded. Section 1 of chapter 743, Private Acts of 1933, passed in furtherance of the agreement, authorized and directed the city of Chattanooga to use a sufficiency of the funds derived from a sale of the bonds to pave Barton avenue from its southern terminus to Frazier avenue when necessary, and subdivision (2) provided:

"The City of Chattanooga is hereby authorized to use so much of the bond fund provided for by said Chapter 150 as may be necessary for the purpose of refunding to the citizens and/or property owners of the Town of Riverview such amount as shall have been paid by them on abutting property assessments levied by the Town of Riverview before annexation for the construction of streets and curbs and gutters within said Town, and for the purpose of relieving such citizens and/or property owners from liability on all such assessments as shall accrue in the future. Provided, however, that nothing herein shall be construed to relieve the citizens or property owners, or the property situated within said Town from liability to the holders of bonds issued on the faith

of such assessments and which constitute a lien on such abutting property, it being intended only that the City of Chattanooga, Tennessee, shall relieve such citizens and, or property owners and property situated in said Town from liability to it on account of said assessments, and that such assessments as they mature be paid out of the funds derived from the sale of bonds pursuant to the provisions of said Chapter 150; Provided, however, a sufficient amount of the funds realized from the sale of bonds pursuant to the provisions of said Chapter 150 are available after providing for the payment of the cost of paving said Barton Avenue.''

It is shown by the bill that all improvements mentioned in the original act had been made in Riverview except that of constructing the new road east of Barton avenue, and that $90,000 of the fund created for such improvements was unexpended when the amendatory act was passed, which was more than sufficient to make additional improvement on Barton avenue. The assessments involved were levied by the town of Riverview before annexation was proposed. When the question of annexation was submitted to the voters under provisions of the original act, the Riverview street improvements had been completed.

The cost of improvements had been met by Riverview bonds which constituted a charge upon Riverview taxable property and these bonds and the interest were to be met one-third by general taxes and two-thirds by the special assessments. As an inducement, and a necessary incident to abolition of the corporation of Riverview and its absorption by Chattanooga, the city assumed, and under the anexation act became primarily liable for, all of the Riverview street improvements

bonds. The city also succeeded to all of the taxables in Riverview, including the right to the special assessments made for street improvements. However, there was a lien against the property in Riverview for the benefit of the holders of Riverview bonds.

■ It is to be presumed that the Legislature understood the situation and considered the obligations, rights, and equities attending the annexation agreement, and understood the public policy and expediency that induced the arrangement and agreement between the city of Chattanooga and the committee of citizens representing Riverview when the amendatory act, chapter 743, was passed. The amendment operated as if the subject-matter had been incorporated in the original act of annexation. It is a part of the original, and both are to be construed as intended to effectuate the agreement that resulted in the annexation of Riverview. *Goodbar* v. *Memphis,* 113 Tenn., 20, 81 S. W., 1061; *Stonega Coke Co.* v. *Southern Steel Co.,* 123 Tenn., 428, 131 S. W., 988, 31 L. R. A. (N. S.), 278.

■ In furtherance of annexation, the city could and did agree to assume the bonds of Riverview issued for street improvement and to relieve the property owners therein of special taxes and assessments; and the Legislature could, in the exercise of their plenary power, direct the expenditure of the fund left after all the improvements in Riverview had been made in fulfillment of that agreement. *Luehrman* v. *Taxing District,* 2 Lea, 425; *State* v. *Cummings,* 130 Tenn., 566, 172 S. W., 290, L. R. A., 1915D, 274.

■■ There is no exact rule for the determination of a corporate purpose within the constitutional provision which empowers the Legislature to lay taxes for county

and corporate purposes, and by implication forbids the expenditure of revenue for other than a corporate purpose. The question of what is or is not a corporate purpose is dependent upon the facts involved. The implied restraint against legislative appropriation of municipal funds for other than corporate purposes does not extend to any expenditure required to meet obligations which the city assumed upon equitable or moral considerations, as in this case the obligation attending the apportionment of rights and the adjustment of obligations incident to the annexation of Riverview.

The relief from special assessments in Riverview was one of the conditions of annexation. The agreement made with legislative approval and intended to equalize the burden on citizens of Riverview by a release of special assessments for street improvements made that a corporate purpose and the Legislature, by chapter 743, Private Acts of 1933, approved the purpose and directed that it be carried out.

In 19 Ruling Case Law, 724, it is said:

"The principle that a municipal corporation cannot lawfully pay out the public funds in gifts and gratuities does not go so far as to make unconstitutional a statute authorizing or compelling a municipality to pay debts or claims which could not be enforced in court but which are just and equitable and which the municipality is under a moral obligation to pay."

And further: "The control of the legislature over the revenues of a municipality derived from taxation is perhaps as absolute as its control of any other species of municipal property. It may doubtless require equities existing against such revenues to be recognized and discharged. Thus if moneys have been raised for a special

purpose and paid into the treasury of the municipality, after which it becomes clear that the purpose is not to be accomplished nor even longer sought, the legislature may direct the repayment to the taxpayers of the moneys thus received from them.''

The Indiana Supreme Court (44 Ind., 524) declared an act valid which authorized a county to refund taxes collected to promote a railroad. In *Board of Commissioners* v. *Lucas,* 93 U. S., 108, 116, 23 L. Ed., 822, the United States Supreme Court affirmed the judgment saying: ''Of the power of the State to direct a restitution to taxpayers of a county, or other municipal corporation, of property exacted from them by taxation, into whatever form the property may be changed, so long as it remains in possession of the municipality, we have no doubt.''

The authority to refund special assessments upon abutting property for public improvements was sustained in *Striker* v. *Striker,* 31 App. Div., 129, 52 N. Y. S., 729; *People* v. *Molloy,* 35 App. Div., 136, 54 N. Y. S., 1084, and *Rinschler* v. *Alpine,* 136 A., 502, 5 N. J. Misc., 337.

The power of the Legislature to appropriate public money for use in refunding taxes to a class of taxpayers has been upheld in our case of *Demoville* v. *Davidson County,* 87 Tenn., 214, 10 S. W., 353.

In the unreported case of *Hinson* v. *Lebanon,* Nashville, December term, 1933, this court sustained chapter 172, Private Acts of 1931. That was an act for the relief of abutting property owners. It authorized a refund of special assessments and a transfer of the tax liability from abutting property to the taxpayers at large upon approval of the voters within the municipal-

ity. No question was made in that case that the money was not applied to a corporate use. It was insisted that the act violated the uniformity and equality provisions of the Constitution. In disposing of the question, the court said the improvement of streets in Lebanon was a corporate purpose which the Legislature could empower the municipality to make through a general assessment against all property owners or a special assessment under the abutting property act, and the act to relieve abutting property owners did no more than change the mode of payment of taxes so as to distribute the charge to the taxpayers at large instead of limiting it to owners of abutting property.

In the case before us the question is made that the amendatory act is violative of article 2, sections 28 and 29, of the Constitution. Section 28 is not applicable. No question of inequality in the imposition of taxes is here involved. The fund devoted to relief from the special assessments was derived from bonds sold pursuant to the annexation act. That fund was appropriated by the original act to particular uses, among them the construction of the new street. As held in *State* v. *Cummings, supra,* the Legislature could divert that fund from one use to another, the only limitation being that implied by article 2, section 29, of the Constitution, that public revenue can only be appropriated to corporate purposes.

■ As heretofore stated, the diversion of the fund after abandonment of the new road to the relief of property owners was incident to annexation and the recognition of an obligation assumed by the city of Chattanooga. Article 2, section 29, of the Constitution does not forbid the legislative application of the existent fund to

the use made of it. The fund was created pursuant to provisions of the act of 1929 and as an incident and condition that attended annexation, and observance of the condition violates no provision of the Constitution.

If the fund should not be applied as directed by the Legislature in the amendatory act, it would go to the construction of a useless road, hence diversion of the fund effected no change in the situation of any citizen or taxpayer within the city of Chattanooga. The decree of the chancellor must therefore be reversed and the bill sustained. A declaratory decree will be entered in conformity with this opinion.