# SOUTHERN BELL TEL. & TEL. CO. v. CITY OF NASHVILLE.—243 S. W. (2d) 617.

Middle Section.   May 30, 1951.

Petition for Certiorari denied by Supreme Court, October 9, 1951.

208

E. C. Yokley, City Atty., of Nashville, for appellant.

Bass, Berry & Sims, and Hume, Howard, Davis & Boult, all of Nashville, for appellee.

HOWELL, J. The bill in this case was filed by the Southern Bell Telephone and Telegraph Company against the City of Nashville and seeks under the Declaratory Judgments Act, Code, Section 8835 et seq., to test the validity of a resolution of the Board of Public Works of the City, dated May 20, 1941, which required the complainant to relocate, at its own expense, its telephone

facilities on Minnesota Avenue in Nashville at a point where a grade elimination project was to be completed at the crossing of the Nashville, Chattanooga and St. Louis Railway on this avenue.

The Chancellor held the resolution to be invalid and unenforceable and the defendant has appealed to this Court and has assigned errors.

The resolution of the Board of Public Works of the City, out of which the litigation arose, is as follows:

"Be it resolved by the Board of Public Works of the City of Nashville:

" 'Section 1. That the Southern Bell Telephone and Telegraph Company be ordered and directed to relocate at its own expense, its telephone facilities on Minnesota Avenue, at the point where the tracks of the N. C. & St. L. Railway cross said Avenue, in such manner as shall be necessary to accommodate the prosecution of a project planned by the Department of Highways and Public Works of the State of Tennessee and approved by the Public Roads Administration, as administrative agency of the Federal Government, under the provisions of the Federal Highway Act of 1938, said project being designed by the Public Roads Administration as "Grade Separation Project F.A.G.M. 26-B-(1)," and being a project looking to and for the purposes of the construction of an overhead bridge over the tracks of the N. C. & St. L. Railway at said location to eliminate a crossing of the railway at grade with Minnesota Avenue.'

" 'Section 2. That this resolution shall take effect from and after its adoption, the welfare of the city requiring it.' "

It is insisted for the defendant that the Chancellor erred in holding that this resolution is invalid and unenforceable.

There is no controversy about the facts.

The complainant company was granted a franchise or right to erect and maintain in operation telegraph poles, cables and wires in the city streets by an ordinance passed October 16, 1888. Section 3 of this ordinance is as follows: "Section 3. That if any of the cables, wires and poles now erected and in operation are so located as in the judgment of the Board of Public Works and Affairs to injuriously affect the welfare of the City or of any of the citizens thereof, then after five days' written notice from said Board of Public Works and Affairs, said Company shall cause said objectionable cables, wires and poles to be removed, or, at the election and demand of said Board, so placed as to render them, in the judgment of said Board, free from objection."

Later ordinances were passed requiring these telephone wires or lines to be placed in underground conduits on certain streets in the city including Minnesota Avenue, which ordinances were complied with by the complainant company, by placing its wires in permanent conduits underground.

There was a grade crossing of the N. C. & St. L. Railway on Minnesota Avenue and the telephone wire conduits ran under the railroad. The Federal Aid Highway Act of 1938, Sec. 3, 52 Stat. 633, provided for the reconstruction of railroad grade crossings and the Secretary of Agriculture of the United States was authorized to make rules and regulations to carry out the provisions of the Act. On April 11, 1939, the Secretary issued a regulation exempting railroads from paying any part of the cost of eliminating a grade crossing, where it appeared on a road which had been adopted as a Federal Aid Highway. The N. C. & St. L. Railway recommended the elimination of this grade crossing on Minnesota Ave-

nue which had been declared a Federal Highway and the inclusion of this crossing for elimination was approved by the proper agencies. The Highway Department of the State then entered into a contract with the N. C. & St. L. Railway which provided that the project would be carried out with funds to be received from the Federal Government and without cost to the railway. Since 1921 the State Statute has provided that the railroads should contribute 50% of the cost of eliminating grade crossings and the State the other 50%.

The Highway Department of the State entered into contracts with the N. C. & St. L. Railway Company, the Western Union Telegraph Company, the Waterworks Department of the City of Nashville and the Fire Department, the City Electric Power Board and the City Light Plant for the adjustment of their various facilities made necessary by the construction of the grade elimination, which provided that these organizations should be reimbursed for the costs incurred in connection with the work made necessary to eliminate the crossing.

No such agreement was entered into with the complainant company and the resolution hereinabove set out and attacked by the bill in this case was passed.

The complainant notified the City that it would not comply with this resolution and in order that the work be not delayed an agreement was entered into between the complainant and the defendant by which the complainant had the necessary work done at an expense of about $11,000 which it paid. This agreement also provided that the complainant would file the bill in this case under the Declaratory Judgments Law and that if the resolution should finally be declared invalid the City would reimburse the complainant for the expense of the work, not to exceed the sum of $11,000. Pending the determination

of the question the Public Roads Administration has declined to approve the reimbursement of the complainant for the expense of relocating its facilities to accommodate the grade crossing elimination.

It was stipulated among other things that:

''There was no appreciable intervening changes in conditions at said Minnesota Avenue grade crossing between the time complainant's facilities were installed in 1939 and the re-location of said facilities in 1941.

''The railroad involved was the source of the danger at said Minnesota Avenue grade crossing and substantially benefitted from the prosecution of said project. Complainant's facilities which were there were constructed underground and contributed in no way to the danger of the grade crossing and complainant received no benefit from the prosecution of said project.

There was no contractual obligation upon the complainant and this is not a condemnation case.

■ The original ordinance, Section 3 of which is set out above did provide that ''if any of the cables, wires and poles *now erected and in operation* are so located'' as to injuriously affect the welfare of the City, the company should cause them to be removed. It is obvious that this clause cannot refer to the situation here as the wires of the complainant were long after the passage of the franchise ordinance placed in underground conduits.

Therefore the only way the defendant could justify the passage of the resolution in question would be that it was a valid exercise of the Police Power of the City.

■ The rights of the complainant company to maintain its wires in Minnesota Avenue constitute property rights which are protected by both the Constitution of the United States and the State of Tennessee and of

which complainant cannot be deprived without due process of law.

■ In City of Chattanooga v. Tennessee Electric Power Company, 172 Tenn. 524, 112 S. W. (2d) 385, 390, the Supreme Court said: "A right of way upon a public street, whether granted by act of the legislature, or ordinance of city council, or in any other valid mode, is an easement, and as such is a property right, capable of assignment, sale, and mortgage, and entitled to all the constitutional protection afforded other property rights and contracts."

See also Southern Bell Tel. & Tel. Co. v. City of Mobile, 5 Cir., 162 F. 523, 532, and other cases.

■■ While this right to occupy the streets is a property right of the complainant, it is subject to the valid exercise of its police power by the defendant City. In order to be valid this exercise of its police power must not be unreasonable or arbitrary and its exercise must have a reasonable relation to the end sought to be attained, which in this case is the elimination of a grade crossing. The Acts of 1921, Chapter 132, Code Sections 2638-2643, provide for the elimination of grade crossings and impose upon the railroad involved 50% of the expense, the remaining 50% to be paid out of public funds. Under the Rules and Regulations promulgated by the Secretary of Agriculture in connection with the expense of the elimination of this grade crossing it is provided that "State laws pursuant to which contributions are imposed upon railroad for grade crossing projects shall be held not to apply to projects under the Act. If any contribution by a railroad is indicated for right-of-way or construction cost of any project, the record of such project shall be supplemented by a statement from the

railroad company that the indicated participation is wholly voluntary.''

■ The record discloses that the United States, acting through the Bureau of Public Roads and the Secretary of Agriculture, provided the funds for the elimination of the grade crossing involved and the agreements entered into looking to the construction of this grade elimination provided that the entire cost was to be paid out of the funds appropriated by the United States Government. It also appears that the entire expense imposed upon all the public utilities affected except the complainant, has been borne by the Federal Government. It does not appear from the record why the complainant was the only utility required to bear the expense of relocating its facilities. The equities of the case are with the complainant. The entire project has been completed at no expense to the utilities operated by the City or to the Western Union Telegraph Company. The ordinance in question discriminates against the complainant and is not valid for the further reason that it is an attempt by the City of Nashville to exercise under its police power, a right to require complainant to pay a part of the expense of eliminating a grade crossing and such exercise of police power is in direct conflict with the legislative policy of the State as shown by the Acts of 1921 Code Sections 2638-2643, which provide for the elimination of such grade crossings through the Highway Department of the State.

In this case the complainant has complied with all its obligations under its franchise granted by the City, its facilities in Minnesota Avenue were in underground conduits, were not a source of any danger, the complainant did not benefit in any way by the required changes in the location of its conduits, all other utilities were reimbursed

for the expenses of relocating their facilities, the elimination of this grade crossing was not a project of the City of Nashville under its police power or any of its charter provisions but a project of the Federal Government for the benefit of the public and the Railroad Company, which was to be paid for by the Government and we find no merit in the attempt of the City to single out this complainant and attempt under the police power to force it to pay the cost of relocating its facilities.

The ordinance in question is declared to be unreasonable, invalid and an attempt to unlawfully exercise the police power of the City, and is therefore void.

We concur in the findings of fact of the Chancellor and the assignments of error are overruled and the decree of the Chancery Court is affirmed.

The appellant will pay the costs.

Affirmed.

Hickerson, J., and Kizer, Special Judge, concur.